No. 8317.

| 33 | 1381 |
|----|------|
| 48 | 793 |
| 48 | 799 |
| 48 | 944 |
| 33 | 1381 |
| 51 | 1572 |

THE STATE OF LOUISIANA EX REL. THOMAS B. PUGH, CORONER AND ACTING SHERIFF, ETC., VS. THE JUDGE OF THE TWENTIETH JUDICIAL DISTRICT COURT ET AL.

A judgment of this Court, declaring a State officer ineligible and his office vacant, commanding nothing to be done and upon which no writ issues, needs not be recorded in the court below to produce its legal effect. Such judgment becomes, upon its rendition, instantly operative.

In the case at bar, the judgment of this Court was rendered on a rehearing and no delay was necessary for its finality.

The writ of Error from the Supreme Court of the United States, was necessarily issued in the premises *after* the judgment of this Court had become final and definitive and produced its legal effect. Such writ of Error could not, therefore, act as a *supersedeas*, which, under the legislation of Congress and jurisprudence of the U. S. Supreme Court, is not intended to interfere with the judgment of a State Court when the latter has already received its execution, or, as in the instant case, has produced its effect.

It does not appertain to the inferior courts or judges of the State to determine or recognize the operation and effect of a writ of Error directed to this Court by the Supreme Court of the United States.

This case is a proper one for the exercise, by the writs of Mandamus and Prohibition, of the plenary powers granted to this Court by Article 90 of the Constitution.

APPLICATION for Writs of Mandamus and Prohibition.

*Pugh & Howell* for the Relator:

First—The judgment of this Court of the 28th of May, in the matter of State of Louisiana ex rel. Howell vs. A. J. Echeverria, on rehearing, was final and absolute at the instant of its rendition. Sec. 1007 R. S. U. S. has no application to judgments and executions of State Courts; it refers solely to United States Courts. (4th Otto U. S. 52.)

Second—The decree in said matter was self-executory; it ordered nothing to be done; it simply declared existing facts, defined the law, and the law executed itself. Const. 1879, Art. 118.

Third—The suspensive appeal taken by relator herein on the 4th of June, kept in full force and effect the first order for the books and keys, etc., granted herein, and vested this Court with full jurisdiction of the cause, and all subsequent orders issued by the District

State ex rel. Pugh vs. Judge of Twentieth Judicial District Court et al.

Judge were absolute nullities, and an infringement upon the appellate jurisdiction of this tribunal. 33 An. 929; 32 An. 1278, 1185; 19 L. 172; Hennen, p.—.

Fourth—Judges cannot delegate their judicial powers to any one; but must exercise them personally. 27 An. 663.

*R. N. Sims* and *Walter Guion* for the Respondent:

The judgment of this Court in the Echeverria case (No. 8123,) could not become executory until after it had been filed in the clerk's office of the District Court. C. P. Arts. 617, 618, 619, 623, 915; Green vs. Van Buskerk, 3 Wall. 450; Freeman on Execution, § 13; Wells vs. Merz, 23 An. 392.

The defendant, Echeverria, lodged his writ of error and filed his bond for a supersedeas on the morning of the 3d of June. From that moment this Court was divested of all jurisdiction and control of the case or any part thereof. State ex rel. Jumel vs. Johnson, 29 An. 403.

No attempt was made by the coroner to act in the place of the sheriff until after the writ of error had been granted and the bond filed. (Affidavit of Alfred Tete).

When the ex parte order of the District Judge was served on the sheriff's deputy at 3 o'clock in the afternoon on the 3d of June, this Court no longer had jurisdiction.

"Writs of error from the Supreme Court in cases authorized by law, shall be issued in the same manner and under the same regulations, and shall have the same effect as if the judgment or decree complained of had been rendered or passed in a court of the United States." U. S. Revised Statutes, Sec. 1003; 29 An. 403, Draper vs. Davis; U. S. Supreme Court, Central law Journal, Jan. 28th, 1881, p.;91; Desty's Federal Procedure, p. 215.

The judgment appealed from is suspended, as a matter of law under the act of Congress by filing the supersedeas bond. Goddard vs. Orderay, 94 U. S. 672; Williams vs. Bruffy, 102 U. S. 248. Hennen, p. 73, (effect of appeal) No. 3 and cases cited. 11 An. 728; 5 La. 314; 14 La. 292; 10 Rob. 147–419.

In a late case this Court said: "Although we are the creatures of the Constitution of the State, the judicial trust confided to us embraces a faithful administration of all the laws of the land; and our duty, as well as our solemn oaths, bind us to obey equally the Constitution of the United States and the Constitution of this State." Saloy et al. vs, City of New Orleans, 33 An. 84.

The decree of this Court in the Echeverria case being suspended, there was no vacancy in the office of sheriff and the coroner was without authority, under the law, to act for or in place of the sheriff.

After the writ of error was perfected, by pretending to act as sheriff, he became a mere trespasser, liable in damages for his tortious acts. Durbridge vs. Wentzel, 17 An. 20'; Freeman on Executions, § 105; Supersedeas signifies: Suspend, set aside, stay. Webster's Dict. Verbo Supersedeas.

In the Jumel case, 29 An. 403, this Court refused to execute the judgment pending the writ of error.

"It is better for individuals, better for the public to suffer the inconvenience of delay and temporary suspension in the enforcement of a right than to incur the risk of depriving one of the right to have his complaint heard and determined in the highest judicial tribunal having jurisdiction." 29 An. 403.

An application for a writ of error, in proper form, was filed in this Court on the 31st of May, but was refused by the Chief Justice. The Supreme Court of the United States having granted the writ of error and approved the bond for a supersedeas, on the 2d of June, the effect of the writ related back to the time when the application was originally made to this Court.

The refusal to grant the writ then stood as if the order denying it had been reversed and an order entered granting the writ. Williams vs. Bruffy, 102 U. S. 248.

The case of Doyle vs. Wisconsin, 94 U. S. 50, is not in point. In that case, the order or mandate of the Supreme Court had been executed before a writ of error was granted, and the application for the writ was filed nearly sixty days after the execution of the decree.

State ex rel. Pugh vs. Judge of Twentieth Judicial District Court et al.

In case of a vacancy in the office of sheriff, the coroner does not become sheriff, but merely acts for and in the place of the sheriff. Const. Art. 118.

The coroner's status is the creature of the law, and no act that he might do could in any manner add force to the decree of this Court in suit 8123. And we contend that the moment the supersedeas bond was filed, the coroner was divested of all authority to act for or in the place of the sheriff of the parish of Assumption.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J.    The relator applies for a *mandamus* to compel the defendants to recognize him as the acting sheriff of the parish of Assumption, and for a *prohibition* to prevent them from interfering with him in that capacity. He substantially avers that, on the rendition of the judgment of this Court, on the 28th May last, in the case of State ex rel. Howell vs. A. J. Echeverria, 33 An. 723, he became entitled to discharge the functions of sheriff of said parish; that he took possession of the room, papers and keys pertaining to that office; that the District Judge for the Twentieth Judicial District has entertained proceedings from the defendant cast in said suit, which obstruct the effect of the judgment of this Court, and which restore said defendant to the office from which he was excluded by this Court, to the prejudice of relator who is entitled to fill the office until the vacancy declared to exist shall have been filled in the manner prescribed for by law; that by acting as they have done the judge and said defendant have become guilty of a contempt of the authority of this Court, and should be punished accordingly; that they should be commanded to recognize him, the relator, as such acting sheriff and prohibited from interfering with him as such, and that all the orders and decrees made by the judge, which prevent him from discharging the functions of the office, and which restore the ousted defendant thereto, should be annulled to all ends and purposes. On this application the defendants were ordered to comply with the prayer of the petition or show cause to the contrary, and a preliminary restraining order was made.

The defendants have answered purging themselvs from all intention to commit any act of contempt, and averring that the acts sought to be avoided are valid, having been done in furtherance of law, the judgment of this Court never having become operative for want of recording in the lower court, and because of the granting of a writ of error removing the cause to the Supreme Court of the United States; that the relator had no authority to assume to discharge the functions of the office and to take possession of the incidents thereof; that the District Judge, on the application made to him, had a right to enjoin the relator from acting as such sheriff, and from interfering with defendant in the discharge of the duties of that office.

As disclosed by the pleadings and the record, the facts of the case are the following:

On the 28th of May last, on a rehearing granted in the said case of the State ex rel. Howell vs. Echeverria, this Court annulled its previous judgment. It decreed the defendant Echeverria ineligible to the office of sheriff of the parish of Assumption, and declared that office vacant.

On the 31st following, the defendant, upon averments, applied to the Chief Justice of this Court for a writ of error to the United States Supreme Court, but his application was declined the same day, the case not being considered as one within the appellate jurisdiction of that tribunal.

On the 2d of June following, the relator, who is the coroner for said parish, with an authentic copy of the mandate or judgment of this Court in hand, applied to one claiming to be the deputy of the defendant Echeverria, then absent, for the possession of the room, books and papers of the office, and for the keys of the court-house and jail, claiming to be, in his capacity of coroner, the acting sheriff of said parish in consequence of the vacancy declared by this Court by said judgment to exist therein. This application was refused, and was not to be granted unless upon an order obtained from the District Judge directing the delivery·

On the same day the relator, on averments, prayed for the order, but the judge, taking the matter under advisement, made the order on the following day, viz: the 3d of June.

On presentation of that order the same day the possession asked was delivered.

On the 2d of June, an application having been made by the defendant Echeverria to his Honor, Associate Justice Woods of the Supreme Court of the United States, a writ of error had been granted, and the required bond had been furnished and accepted.

On the 3d of June these proceedings were lodged in the clerk's office of this Court.

On the same day, after the order of the District Judge for delivery of the incidents of the sheriff's office had been complied with, the defendant Echeverria, on averment of the writ of error granted and lodged as aforesaid, and of rights claimed in consequence thereof, applied for and obtained an order rescinding the decree for the possession of the room, books and keys aforesaid, and recognizing him as entitled to continue in the functions of sheriff of said parish. The relator then applied for, obtained and perfected a suspensive appeal from the rescinding order. On the other hand, the defendant Echeverria sought, obtained and perfected a suspensive appeal from the order of delivery.

On the 17th of June, on averments, the defendant Echeverria sought

and obtained, from the District Judge, an order directing the relator to deliver to him the room, books, papers and keys pertaining to the said office, and enjoining him, the acting sheriff, from interfering with him, Echeverria, as the sheriff of said parish of Assumption. Upon the rendition of these orders Echeverria assumed to discharge the duties of such sheriff, and to take possession of the paraphernalia of the office. It is at this juncture that the relator laid his complaints before this Court.

We have stated the substantial averments of his petition, the orders rendered thereon, and the main defenses set up adversely to his demands.

Before proceeding to the consideration and determination of the case presented, we propose to dispose of the rule for contempt. From the showing made by the defendants, we think we are authorized to release them from the charge. 24 An. 213.

We will add, that we deem it proper to say, that, in the present proceeding, we cannot be asked to pass directly upon the correctness of the two orders from which suspensive appeals have been taken returnable to this Court and that we will not do so, although we may *ex necessitate*, unavoidably, have, in a collateral way, to express an opinion as to their validity.

Those matters being thus disposed of, we will now proceed to consider the questions presented for determination by the litigants. We take it, that the question submitted for solution is substantially : Whether the District Judge, made defendant herein, with said Echeverria, was authorized by law to entertain and countenance, as he did, the proceedings inaugurated by said Echeverria, under the averments touching the writ of error, and thus to prevent the judgment of this Court ousting said Echeverria from said office and declaring it vacant— from producing its full effect ; in other words, whether the District Judge, by acting as he had, has or not exceeded the bounds of his authority and usurped a jurisdiction which his Court could not legally exercise.

The determination of that question depends solely upon : whether the relator, as coroner, was or not lawfully and actually in possession of the office of sheriff of the parish of Assumption, *when* the writ of error was lodged in this Court.

From the view which we have taken, it is immaterial whether the copy of the judgment of this Court was or not filed or recorded in the lower court on the 2d or 3d of June, or was ever at all filed and recorded.

We consider that a judgment in which the State, representing the whole commonwealth, is concerned, which orders nothing to be done, which forbids nothing from being done, upon which no writ can issue, the effect which could not be kept in suspense by any omission on the part of any one to have it filed and recorded,—did not require any filing

and recording in order to produce the effect which, under the law and the Constitution, it was bound to have.

We consider that, upon its rendition, such judgment became final and instantly operative; that consequently, by the force of the law alone, Echeverria was at once ousted from the office, by being declared ineligible thereto; that the office by being declared vacant, was so absolutely; that it ceased to be filled by any incumbent; that by the express provision of the Constitution, the coroner had authority to replace the ousted *de facto* functionary and to act in his place until the vacancy declared to exist would be filled as directed by law.

The proceedings for the writ of error necessarily took place *after* the judgment of this court had become final and definitive and, in the abstract, had produced its effect. They could not and therefore did not undo what had *previously* taken place. Things or facts as they sprung into existence by the force of the law on the 28th of May, when our judgment was rendered, could not be and were not altered by the *subsequent* application for, and granting of, the writ of error, or by any other proceeding in the case.

The judgment declaring Echeverria ineligible and pronouncing the office vacant, was rendered *on a rehearing*. It became instantly final and absolute without the expiration of any delay subsequent to its rendition. The Governor would have had the power, by appointment, to fill the declared vacancy. 24 An. 622. As he did not then do it, the coroner, *eo instanti*, by reason of article 118 of the Constitution, had the right to replace the ousted sheriff *de facto*, and to act in his place until the vacancy was legally otherwise filled.

The effect of the judgment, which is one of absolute ouster, under a special statute, R. S., was to constitute, as it did, a full and complete amotion from office of the party thus removed of all official authority and to exclude him altogether from office holding. *It is not a judgment as must be regarded as an effectual bar to proceedings to procure a restoration to office.* High on Ex. Rem., p. 540, §§ 748, 750; p. 546, § 756; 8 Mod. Rep. 332; 40 Geo. 164; 11 Mod. Rep. 390.

Such a judgment decrees the *status* of a person and is not susceptible of execution by writ. It is one which takes immediate effect and requires no action to put it in operation. The *status* being determined, the consequences follow. By the rendition of that judgment, Echeverria was pronounced ineligible to the office to which he claimed to be entitled; he was instantly excluded from it and it was declared absolutely vacant.

Under article 118 of the Constitution, framed in contemplation of the occurrence of precisely such a case, the coroner was fully empowered to act for and in place of the sheriff until the vacancy was filled,

and he had authority to demand, *eo instanti*, in his capacity of acting sheriff, not the office which the Constitution had given him and which he held, but the possession of the room and the delivery of the books and keys belonging to it.  7 How. N. Y. Pr. 282; 6 Abbott N. Y. Pr. 220 In other words, the moment that the judgment of this Court blew out of the incumbent all official character and existence, the Constitution breathed both in the person of the coroner, who thereby at once became the acting sheriff of the parish.

The refusal of the late incumbent to make such delivery might have been met with a proceeding by mandamus to compel the surrender, C. P. 833; and is made a misdemeanor punishable by fine and imprisonment.  R. S. 2588, 2599.

The articles of the Code of Practice, 617 *et seq.*, which declare that appellate courts must send their judgments to the inferior courts to be executed, and that such judgments cannot be executed unless recorded in the court which first had cognizance of the cause, refer, *vi terminis*, to judgments which order something to be done, which requires execution, for the enforcement of which writs in the name of the State have to be issued; and not to judgments which, as in the instant case, are self-operative and admit of no carrying out by process of law.

This distinction is manifest, and was announced as existing ever since 4 L. 325, where, in the Curtis case, Mr. Justice Porter, as the organ of the Court, said: "The enregistry of the judgment in the inferior tribunal is only necessary to obtain *execution*, but the decree derives no additional force from that formality, no more than placing an execution in the hands of the sheriff would add to the effect of a judgment of the District Court.  The obligations of the parties commenced from the moment the judgment became final, and any act done by them inconsistent with it is contrary to those obligations and can confer no right on them."

This saying is the more remarkable and cogent, as, at the date of the decision (1832), the Code of Practice expressly required (which it does no more since 1852, Act No. 305), a motion in open court to render executory the judgment of an appellate court.

We do not wish to be understood as saying the judgment of ouster by the District Court in Assumption parish could become executory when signed, and that before the ten days following the signature had expired, within which the defendant could take a suspensive appeal, the coroner could have assumed the functions of the office of sheriff in place of the ousted incumbent.  The effect of judgments rendered by such a court and that of judgments rendered by this Court are regulated by different provisions of law.

The titles of the coroner to the office were the final, absolute judg-

1388      SUPREME COURT OF LOUISIANA,

State ex rel. Pugh vs. Judge of Twentieth Judicial District Court et al.

ment of this Court in force at the time, ousting the defendant, declaring a vacancy as complete as in the case of death or resignation, and the Constitution of the State, which authorized him, in cases of vacancy, to act as sheriff until the vacancy shall be filled. Both constituted his commission, his authority to demand possession of the accessories or incidents of the office. Before them the defendant should have promptly yielded. Resistence on his part and continuance in tenure made him once more an intruder. 15 Minn. 221; 32 H. 246; 15 Cal. 120; 60 Barb. N. Y. 234 (1871).

Title to an office is one thing and title to the accessories or incidents of that office is another. C. P. 833; 21 An. 18, 187, 338; 2 An. 401; 12 An. 719; High on Ex. Rem., pp. 61 and 73; Dillon on Munic. Corp., § 684.

It is, therefore, apparent that, on the 28th of May, the judgment of this Court had gone into effect and that, by accepting the discharge of the new functions superadded to his duties as coroner and imposed upon him by article 118 of the Constitution, the relator was, by the power of the law, in possession of the vacant office, although he had not as yet obtained delivery of its accessories, which took place on the 3rd of June following.

The condition of things in existence *before* the proceedings for the writ of error had been perfected, therefore, was a vacancy declared by a final judgment of this Court, filled temporarily by the coroner, under article 118 of the Constitution.

The proceedings were not consummated until the writ was lodged in this Court on the 3rd of June, therefore until *after* the judgment in question had taken effect, *after* the coroner had accepted the discharge of the new functions, until *after* the declared vacancy had been actually filled. It cannot, therefore, be claimed that what had thus been done *before* the writ had been lodged, has been, or has to be, undone, and consequently that the ousted ineligible defendant should be restored to the office from which he was judicially absolutely excluded. "The judgment (rendered to that end by this Court) is such as must be regarded as an effectual bar to proceedings to procure a restoration to office." High on Ex. Rem., p. 546, § 756.

We do not understand that it ever was contemplated by Congress or by the Supreme Court of the United States, as the highest judicial expounder of the Constitution and laws of the United States, to interfere at all, by the legislation on this subject, with the practice of the States, as to the effect of their judgments.

Indeed, in the case of Doyle vs. Wisconsin, 94 U. S. p. 50, that exalted tribunal, well realizing the magnitude of the subject, wisely held, that section 1087 of the R. S., which, as amended by the Act of February

18, 1875, provides that, where a writ may operate as a *supersedeas*, execution shall not issue until the expiration of ten days after the rendition of the judgment, has reference to the judgments of the courts of the U. S. and, therefore, did not apply to State courts.

In 19 Wall. 664, the same tribunal had even held that, if an execution was issued upon a judgment in the courts of the U. S. *after* the expiration of ten days, a *supersedeas, afterwards obtained,* would not interfere with what had been done, but would only prevent future proceedings.

A writ of error is "brought," not when it is allowed, but when it is filed in the court which rendered the judgment. 11 How. 294. It is then only that it can be enforced. 10 Wall. 273; 1 Woods R., 51, 234.

The reason is obvious. It is, that by the lapse of that delay, the judgment creditor had acquired a right to take steps for the enforcement of his judgment, and the proceedings subsequently had could not have the virtue of undoing what had been done by him in the exercise of that right, under a writ to which he was entitled; thus consecrating the principle that what has been done in consequence of an executory judgment and in furtherance of law, cannot be destroyed or annihilated or even altered, by a *supersedeas subsequently* obtained. 24 An. 403; 29 An. 403.

Such being the law and the jurisprudence of the United States, as to cases originating and conducted in their own tribunals, how can it be claimed, with any plausibility, that State tribunals are not equally protected, but are forced in a worse predicament, regardless of local constitutions and laws ?

The authorities relied upon by the defendants cannot, therefore, receive the application claimed for them. 2 How. 74; 3 Wall. 450; 6 Otto, 672; 23 An. 392; 24 An. 600; 29 An. 403; 94 U. S. 672; 102 U. S, 248.

If the judgment of this Court, which pronounced Echeverria ineligible, which declared vacant the office to which he claimed to be entitled, be one which is self-operative, which does not, therefore, require recording in the court of first instance to produce full effect; if, upon the rendition of such judgment, under the Constitution, the coroner had authority to act in place of the ousted sheriff until the declared vacancy was legally filled, and if he accepted and entered upon the discharge of his functions as acting sheriff, *before* the proceedings for a writ of error were actually perfected and lodged in this Court, the irresistible conclusion is, that the condition of things or the state of facts *then* in existence had to remain in *statu quo* until the declared vacancy were filled or the judgment of ouster reversed and Echeverria recognized as entitled to the office from which he had been excluded.

But, even if it were true that the effect of the granting of the writ of

error and the lodging of it in this Court, would be to undo what had been done (a proposition which we in no manner concede), it certainly did not appertain to the defendant to assert, and to the judge of the lower court to recognize such effect, and thus to prevent the judgment of this Court from producing the consequences which, under the law, were to and did flow from it.

It was the duty of the District Judge and of the defendant to respect the judgment of this Court, the former as a member of the State judiciary, subordinate and ancillary to the authority of this Court, the latter as a litigant bound by the finding of this Court against him, until such finding were reversed. Neither had authority to nullify and set at nought, or even interrupt or suspend, the effect which that judgment was entitled to produce. In obstructing the effect of that judgment, both have committed a grave and almost a reprehensible mistake. The writ of error is directed in the name of the Supreme Court of the United States to the Judges of the Supreme Court of Louisiana, and is not addressed to the judge of the District Court for the Twentieth Judicial District sitting in Assumption parish. To this Court alone it appertains primarily to determine and regulate its effect, subject to correction by superior but not by inferior authority.

In rescinding the order given by him for the delivery of the incidents of the office of sheriff to the relator, in allowing a suspensive appeal from that order for possession, in directing the relator to turn over to the defendant those incidents and in enjoining him from interfering with the defendant as sheriff, the judge a quo has assumed to suspend, if not to nullify, the effect of the judgment of this Court. He has thereby clearly exceeded the bounds of the jurisdiction of his court and has usurped the exercise of powers with which the law has not clothed him and which are vested in higher authority.

The relator is clearly entitled to relief. He has applied for both a *Mandamus* and a *Prohibition*.

We deem that, in the sound exercise of the plenary powers vested in this Court, by article 90 of the Constitution, which provides that it " shall have control and general supervision over all inferior courts,"— we can grant him both reliefs.

It is true, as a rule, that a *mandamus* does not issue, unless to coerce the performance of a ministerial duty, but that rule, like all others, has its exceptions. Shortly after organization of this Court under the present Constitution, we had occasion, in two cases brought to our notice, to consider the object and purport of that constitutional provision ( Art. 90 ), and to lay down some general rules by which we were *ordinarily* to be guided. We then prudently made an express reserve of the rights to make exceptions to those general rules in cases in which

State ex rel. Pugh vs. Judge of Twentieth Judicial District Court et al.

urgent considerations of public policy might demand our interference. 32 An. 553.

The case now before us is one in which the whole community is highly interested, one in which,—under constitutional provisions adopted and under laws enacted, to prevent office-holding by a certain class of persons—an erring magistrate and an ineligible and ousted incumbent are asked to be prevented from arresting and thus nullifying the effect of a final judgment of this Court and paralyzing a constitutional provision.

The object of the writ of *Mandamus* is to prevent a denial of justice. It should, therefore, be issued in all cases where the law has assigned no relief by the ordinary means and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever. It issues at the discretion of the court, even where the party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay, that the public good and the administration of justice will suffer from it. C. P. 830, 831.

We think that, under the emergencies which have arisen, the public interest requires speedy and efficacious remedies to suppress the disorders which have been brought about and to restore things to their normal condition. We, therefore, feel empowered to direct the defendants to recognize the relator as the acting sheriff of the parish of Assumption and not to interfere with him, in that cap city, provided that the declared vacancy which the Constitution authorized him to fill, has not been heretofore filled, in a manner pointed out by law.

Under the unprecedented circumstances of this case, we consider that it was the duty of the District Judge, not only to recognize, as he at first did, the relator as such acting sheriff, but also after such recognition, to have abstained from interfering with him, at the instance of Echeverria, his co-defendant herein, as he has done. It is not pretended that, but for the writ of error lodged in this Court, the relator would not have had the right of replacing the ousted sheriff.

The defendants have, without authority, overleaped the barrier which our judgment, the law and the Constitution had raised before them. They must now submit to the solemn behests of justice.

It is, therefore, ordered, adjudged and decreed that the alternative writ of mandamus and the provisional writ of prohibition herein issued be made peremptory, at the costs of defendants.