THOMPSON, J.
 

 The facts in this case are undisputed, and are established by documentary evidence.
 

 At a judicial sale under executory process in foreclosure of a ranking conventional mortgage, the Interstate Trust & Banking-Company became the purchaser of a certain lot and improvements
 
 located at and
 
 forming the corner of Bourbon and St. Ann streets in this city. The adjudication was made on September 6, 1917, but the sheriff’s deed was not executed until February 4, 1919.
 

 The mortgage foreclosed was executed by Joseph
 
 Franek
 
 on April 9, 1919, and was given to- secure a note for $3-,513, payable to the maker’s order, and indorsed by him in blank.
 

 The maker of the note having- died, the seizure and sale proceedings were had against -his widow, who was appointed administratrix.
 

 On June 26, 1919, the Interstate Trust & Banking Company sold the property to Edward P. Bernet.
 

 On April 28, 1913, Gerlando Alfano obtained a judgment via ordinaria against Joseph Franek for $3,433, with a recognition of a mortgage on the same property, but which was subordinate to the mortgage held by the bank.
 

 This judgment was regularly revived in favor of the widow and heirs of Gérlando Alfano.on June 7, 1923.
 

 A writ of fi. fa. was issued on the judgment and a direct seizure was made of the mortgaged property, notwithstanding the fact that the sale to the bank under foreclosure proceedings and the sale by the bank to Bernet were extant upon the public records, and were valid and translative of property on their face.
 

 Thereupon Bernet sued out an injunction, restraining the seizing creditor and the sheriff from proceeding with the sale of the property under the writ of fi. fa.
 

 In answer to the injunction of Bernet, and in justification of the seizure under the fi. fa., the plaintiffs in execution attacked the sale to the bank as being null and void, for the reason that prior to the adjudication and sale the executory process sued out by the bank had been annulled and set aside by a judgment of the district court, and that an appeal had been prosecuted to the Supreme Court from that judgment; that the
 
 *501
 
 judgment of the Supreme Court had not been returned to the lower court and filed and recorded in that court until after the sale; that hence the district court and the sheriff were without jurisdiction and authority to proceed with the executory proceedings.
 

 The defense was rejected on a trial in the lower court, the injunction was perpetuated, and the seizing creditors were condemned to pay the plaintiff in injunction $150 attorney fees.
 

 It appears that, when the bank applied for the order of seizure and sale, a litigation involving the validity and the rank of the mortgages on the property was pending in another division of the civil district court, and the application of the bank was transferred to that division, and was consolidated with the suit or suits therein pending.
 

 A rule was taken on the bank to show cause why the executory process applied for 'by the bank should not be issued. The order of seizure and sale was issued, but, on a trial of the consolidated cases, the executory process of the bank was set aside, and it was from this judgment that the bank appealed to this court.
 

 No appeal was ever prosecuted from the order of seizure and sale issued in favor of the bank, and no injunction was applied for to prevent further proceedings under such process.
 

 On the appeal to this court, the judgment of the district court setting aside the order of seizure and sale of the bank was reversed, and the executory proceedings were reinstated and confirmed. That judgment became final on June 5, 1917. See Franek v. Brewster, 141 La. 1031, 76 So. 187.
 

 While’ it may be true that the setting aside of the order of seizure and sale prevented further proceeding thereunder during the pendency of the appeal despite the fact that no appeal had been taken from the order of seizure and sale and no injunction arresting the same, still, after the judgment on appeal had become final, there was no legal impediment against proceeding with the executory process and the sale of the .property on September 6, 1917, unless it be, as contended by appellants, that the filing and recordation of the judgment of the Supreme Court was a condition precedent to such further proceedings with the executory process.
 

 The Code of Practice, art. 619, provides that the judgment rendered on appeal cannot be executed until it has been recorded in the records of the inferior court which had cognizance of the cause.
 

 And article 620 declares:
 

 “This recording shall be directed to be made by the party wishing to make use of the judgment, * * and the clerks of the district courts shall have the power to receive, file and record, all mandates and decrees rendered by the Supreme Court, and to issue all legal process thereon.”
 

 We hardly think that the requirement of the cited articles can be made to apply to such a case as we have here. There was ' nothing to be done under the judgment of the Supreme Court. There was no judgment of that court to be put into execution. The, executory process had been issued by the district court but later set aside. The Supreme Court annulled the revoking order of the district court, which left the original order of seizure' and sale in full force and effect.
 

 The only thing left to be done was for the sheriff to proceed with the writ which was in his hands. In the case of Curtis v. Curtis, 4 La. 325, the court said:
 

 “The enregistry [of the judgment] in the inferior tribunal is only necessary to obtain execution; but the decree derives no additional force from that formality, no more than placing an execution in the hands of the sheriff would add to the effect of a judgment of the district court. The obligations of the par-ties commenced from the moment the judgment becomes final; and any act done by them inconsistent with it, is contrary to these obligations, and can confer no right on them.”
 

 
 *503
 
 And in the case of State v. Judge, 33 La. Ann. 1387, this court said:
 

 “The articles of the Code of Practice, 617 et seq., which declare that appellate courts must send their judgments to the inferior courts to be executed, and that such judgments cannot be executed unless recorded in the court which first had cognizance of the cause, refer, vi terminis, to judgments which order something to be' done, which requires execution, for the enforcement of which writs in the name of the state have to be issued, and not to judgments which, as in the instant case, are self-operative and admit of no carrying out by process of law.”
 

 After quoting from the Curtis Case, supra, the court further said:
 

 “This saying is the more remarkable, and cogent, as, at the date of the decision (1832). the Code of Practice expressly required (which it does no more since 1852, Ace. No. 305), a motion in open court to render executory the judgment of an appellate court.”
 

 Counsel for appellants cite the case of State v. Williams Cypress Co., 132 La. 950, 61 So. 988, Ann. Cas. 1914D, 1290, but in thacase the question decided was whether the Supreme Court had jurisdiction to correct a clerical error which formed the basis of the judgment after the delay for rehearing 'had expired. One of the reasons incidentally assigned for holding that the court had the power to make such correction was that the judgment had not been sent to the district court for execution.
 

 The judgment sought to be corrected was a moneyed judgment and. of course required something to be done in the lower court before the judgment could be executed. The ruling does not conflict with the holding in the cases we have heretofore cited.
 

 The next case cited by counsel is In re Brown, Applying for Writ of Prohibition, 149 La. 476, 89 So. 625. This court had rendered a final decree, setting aside a judgment appointing a tutor, and remanding the ease for trial of an opposition filed by the under-tutor. Before the mandate was recorded in the civil district court, that court, assigned the ease for trial. This court, on application for a writ, held that the action of the lower court was premature, for the reason that it had not been reinvested with jurisdiction, since the mandate of this court had not been returned to that court and recorded.
 

 Here again it will.be seen that something was to be done in the lower court beforq that court was authorized to proceed.
 

 The last case cited is that of Larcade v. Iseringhausen, 150 La. 1044, 91 So. 505.
 

 In that case an injunction had been sought in the district court, restraining the execution of a judgment which had been affirmed on appeal to this court; the ground for injunction being that the judgment on appeal had not been filed and recorded in , the lower court. The judge refused to issue the injunction, but, on application to this court, he was ordered to do so. The court said:
 

 “The judgment of ,an appellate court cannot even be executed, until it has been recorded in the records of the inferior court which first had cognizance of the cause, and, if an attempt is made to execute a judgment prior to such recordation - in the lower court, an injunction as a general rule will issue to arrest its execution.”
 

 It will be observed that in the above case there was a judgment of the Supreme Court which ordered something to be done by the lpwer court. There was a judgment of the Supreme Court to be executed, and the court very properly held that its judgment could not be executed until filed and recorded in the lower court, and that an injunction, if-timely applied, for, would be issued to prevent such premature execution.
 

 The situation is quite different in the instant case. There was no judgment of this court to be executed. The writ of seizure and sale had been issupd by the lower court and was in the hands of the sheriff. The writ had been set aside by that court. This court merely set aside that judgment, which left the writ in force. There was nothing
 
 *505
 
 further to be done except for the sheriff to proceed under the writ to advertise and sell the property.
 

 Our conclusion is that under the circumstances of this case the sheriff was not required to wait for the filing and the recordation of the judgment of this court before proceeding to the sale of this property as he had been commanded to do.
 

 But there is another principle of law fatal to the appellants’ present attack on the judicial sale, and that is this: A sale' made under the execution of a writ or process prematurely issued cannot be annulled solely on that ground.
 

 Conceding, therefore, that the sheriff was not authorized to advertise and sell the property until the judgment of this court had been returned and filed in the lower court, it was the duty of appellants to have taken the necessary steps to prevent the saicl sale. They could not remain silent, permit the execution of the process to go forward, and then, after the sale, be heard to say that the execution and sale were premature.
 

 This rule has been frequently applied in cases where execution issued before the delay for a suspensive appeal had expired.
 

 In Hatch v. English, 12 Rob. 135, La Barre v. Durnfold, 10 Mart. (O. S.) 180, and Sowle v. Pollard, 14 La. Ann. 287, it was held that a defendant may have a fi. fa. issued before notice of judgment, quashed, and a suspen-' sive appeal allowed, but cannot complhin if he take a devolutive one only.
 

 “A fi. fa. prematurely issued is a mere irregularity, which the defendant may have corrected within the delay for or after he has taken his suspensive appeal. If he suffers the delay to expire without any action, he waives the prematurity.” Wheeling Pottery Co. v. Levi, 48 La. Ann. 777, 19 So. 752; Regan v. Washburn, 39 La. Ann. 1071, 3 So. 178.
 

 In the Sowle and Ward v. Pollard Case, supra, the court said:
 

 “The execution was not therefore void, because issued before the delay had expired, but it became valid by the expiration of the delay, there being no attempt on the part of the defendant to correct the irregularity.”
 

 “This right the defendant may at any time waive, and a valid execution may issue immediately.
 

 “For this delay does not in any manner affect the public order, and as the defendant may voluntarily satisfy the judgment by payment, so also, it would seem, he may ratify an execution issued prematurely, by giving up property for seizure upon it, or voluntarily standing by and seeing the same sold under it”— citing Conrey v. Copland, 3 La. Ann. 452; Leggett v. Potter, 9 La. Ann. 309.
 

 In the ease of Regan v. Washburn, cited supra, Washburn had obtained a judgment in the city court ejecting Regan from certain premises. An application was made to the Supreme Court for certiorari and prohibition, on which the Supreme Court sustained the judgment of ejectment. Before the judgment of the Supreme Court had become final, Washburn proceeded to execute his judgment of ejectment and put Regan and his family off the property. Regan then sued Washburn for damages for the illegal ejectment.
 

 In affirming the judgment which rejected the claim for damages, this court said:
 

 “But conceding, as the record shows, that the ejectment of Regan and family . * * * was a premature and irregular proceeding, is Washburn legally responsible in damages therefor?
 

 “To all practical intents and purposes the proposition of law involved in that question is precisely similar to the discussion of the legal consequences of the premature execution of a judgment rendered by a district court.
 

 “The only impediment to the execution of the Judgment' rendered by the city court in favor of Washburn and authorizing- the ejectment of Regan * * * was the preliminary writ of certiorari emanating- from this court. That impediment was removed by our final judgment, which did away with the effect of the writ.
 

 “Hence, the judgment complained of revived in all its legal bearings and effects, except in so far as its executory condition depended upon the delay within which our own judgment could have been revised on an application for rehearing.
 

 
 *507
 
 “This is exactly the condition with all appealable judgments rendered by district courts, under the provisions of article 624 of the Code of Practice, which in terms, restricts the right of execution of such judgments within a delay of ten days from the rendition of the judgment or from notification thereof on the party cast.”
 

 The same principle must be held to apply in this case. When the judgment reinstating the executory process became final, there was no impediment against the sheriff’s proceeding with the sale, except the want of recordation of the judgment of this court in the court below.
 

 The appellants might have claimed the benefit of want ,of such registry and have prevented or delayed the sale by a timely application for an injunction. Not having done so, and having suffered the éxecution to go forward and a sale made, and the property having passed into the hands of a third party, appellants cannot be heard now to question the validity of the sale on the ground that it was made prematurely. '
 

 Counsel for plaintiff in injunction has asked that the judgment be amended by increasing the attorney fees to $1,000.
 

 There is no doubt that, where property belonging to a third person is illegally seized, and the owner is forced to go into court to obtain the release of the seizure, he is entitled to his attorney fees as damages. Bailey v. Williams, 158 La. 432, 104 So. 197, and authorities there cited.
 

 But the'Obstacle in the way of allowing the attorney fees in this case is that there is no evidence of the value of the services rendered by the attorney and no evidence of* any amount agreed to be paid the attorney by the plaintiff. There is nothing on which the court can fix the attorney fees.
 

 In the case of Soniat v. Whitmer, 141 La. 244, 74 So. 916, the right of the plaintiff in injunction to recover the fees of his counsel for obtaining the release of his property from) an illegal seizure was likened to the right which a defendant in a conservatory writ has to recover such fees for dissolving the writ.
 

 In dissolving conservatory writs, while the jurisprudence is not in harmony on the question as to whether there should be proof of-the value and amount of the attorney fees, the later cases hold that such fees cannot be allowed in the absence of proof of the value of counsel’s services or proof that attorney’s fees have been paid or obligation therefor incurred.
 

 In Whitney Bank v. Sinnott, 136 La. 95, 66 So. 551, this court held that—
 

 “In a judgment dissolving an injunction bn the face of the pleadings, damages for attorneys’ fees should not be awarded the defendant on his reconventlonal demand made in the rule to dissolve, submitted without the introduction of apy evidence, and decided upon no other proof of the defendant’s obligation for attorneys’ fees than the judge’s observation of the proceedings conducted before him and his expert knowledge of the value of the legal services rendered.”
 

 The foregoing ruling was approved in Hunt v. Hill, 138 La. 589, 70 So. 522, and again in Timken v. Wisner Estates, 153 La. 262, 95 So. 711.
 

 We prefer to adhere to the rule announced in the cases noted; the saidi cases being the latest expression of this court on the subject.
 

 For the reasons assigned, the judgment appealed from is amended by rejecting the appellee’s claim for attorney’s fees as in case of nonsuit. As thus amended, the said judgment is affirmed ? the costs of appeal to be paid by appellee.
 

 ST. PAUL, J., thinks attorney’s fees should be allowed.