# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 5, 2022

Lyle W. Cayce
Clerk

No. 21-30729

DAVID L. JUMP,

*Plaintiff—Appellant*,

*versus*

RORY SCOTT MCFARLAND ESTATE,

*Defendant—Appellee*,

*versus*

CHEVRON USA, INCORPORATED, *both for itself and as successor in interest by merger to* TEXACO EXPLORATION AND PRODUCTION INCORPORATED,

*Intervenor—Appellee*,

*versus*

DENNIS JOSLIN COMPANY, L.L.C.,

*Third Party Plaintiff—Appellee*,

*versus*

AMERICAN MILLING, L.P.,

*Third Party Defendant—Appellant*.

No. 21-30729

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:01-CV-2039

Before Higginbotham, Haynes, and Wilson, *Circuit Judges*.
Per Curiam:*

This case involves decades of litigation between multiple parties with competing judgments and interests in an offshore mineral lease, OCS-310, and its revenues. In this round of litigation, David Jump and American Milling, L.P. appeal the district court's decision granting, inter alia, partial summary judgment in favor of Dennis Joslin Company, L.L.C. ("Joslin"). For the following reasons, we AFFIRM.[1]

## I.    Background

To summarize the facts of this case, we refer to and adopt the district court's opinion, which provides an extensive account of the relevant events.[2] *Jump v. McFarland*, No. 01-CV-2039, 2021 WL 4597663, at *1–4 (W.D. La. Oct. 6, 2021). We briefly recap it here.

The case begins with Rory McFarland pledging a $2.5 million note, mortgaged with certain mineral interests, as well as an assignment of production, to the Bank of Commerce of Shreveport, Louisiana. After that bank failed in 1986, the Federal Deposit Insurance Corporation ("FDIC") took over its assets, including that note, mortgage, and assignment.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] We deny the motion for partial dismissal of appeal.

[2] The parties do not object to the district court's account of events.

Though not directly relevant here, in August 1990, Bank One Equity Investment obtained the "Bank One judgment" against McFarland, which it recorded in various Louisiana parishes. Thereafter, in 1991, Jump was awarded a money judgment against McFarland worth millions of dollars from the Western District of Colorado, which he registered in June 1992 and then recorded in various Louisiana parishes.

In October 1991, the FDIC filed suit in federal court to collect the Bank of Commerce debt; Jump intervened based on his Colorado judgment, arguing "that the 1984 assignment to the Bank of Commerce did not encompass a specific offshore lease, OCS-310, and that his earlier-recorded money judgment acted as a lien on OCS-310." *Id.* at *1.

The district court ordered McFarland to pay proceeds into the court registry to compensate the FDIC, but it agreed with Jump as to the offshore lease. Consequently, the court ordered McFarland to pay proceeds from that lease to Jump and Bank One. We affirmed in relevant part. *F.D.I.C. v. McFarland* (*McFarland I*), 33 F.3d 532 (5th Cir. 1994).

After reinscribing the 1984 McFarland mortgage in July 1995, the FDIC assigned that mortgage and its 1993 judgment to Joslin in 1997. In the meantime, Jump, in 1996, used his Colorado judgment to foreclose on McFarland's royalty interest in OCS-310, purchased it in a marshal sale, then, in 1997, transferred that interest to American Milling, a company in which he was a principal.

A disagreement between Joslin and Jump ensued over Joslin's foreclosure of the property subject to the 1984 mortgage and assignment. The disagreement led to a 1999 judgment, where the district court held that Louisiana's 10-year reinscription law required the FDIC to reinscribe the 1984 mortgage and assignment by November 30, 1994. Because the FDIC's reinscription in 1995 was untimely, it deprived its assignee, Joslin, of

priority rank. Therefore, the district court prioritized the Bank One judgment first, the Jump judgment second, and the FDIC's 1984 mortgage and assignment third.

On appeal, we concluded that the Jump judgment from Colorado was not "final" when Jump prematurely registered it in Louisiana. This judgment did not, for instance, dispose of all claims; it was not certified under Rule 54(b); and it did not become final until the Colorado suit concluded in 1997. "Because the registration of the Jump judgment was premature, it could not prime the FDIC's lien following the FDIC's reinscription of the mortgage and assignment in 1995," so even though "registration of the 1997 judgment would assure Jump of a claim to McFarland's assets, a resulting lien would remain subordinate to those held by Bank One and Joslin, respectively." *F.D.I.C. v. McFarland* (*McFarland II*), 243 F.3d 876, 892 (5th Cir. 2001).

With that background in play, the current round of litigation began in 2001, when Joslin filed a third-party complaint to annul the marshal's sale of OCS-310 to Jump. In what the parties call the "2003 order," Judge Stagg granted Joslin's motion for partial summary judgment and declared the 1996 marshal's sale and deed to be nullities. In 2004, Judge Stagg issued another order (the "2004 order") directing the proceeds attributable to McFarland's and Jump's interests in OCS-310 to be deposited in the registry of the court until a further order directed otherwise. The parties unsuccessfully sought to appeal these orders, but we dismissed for want of jurisdiction due to lack of finality. *F.D.I.C. v. McFarland*, No. 05-30377, 2008 WL 162882 (5th Cir. 2008). Further action was taken, and another appeal was filed, yet again to no avail. *See Jump v. McFarland*, 596 F. App'x 256 (5th Cir. 2014) (dismissed for lack of jurisdiction).

Another round of litigation occurred with the parties still arguing over various property rights. As the district court explained: "McFarland first argued that claim preclusion/res judicata made McFarland a beneficiary of the 2003 order that nullified the marshal's sale." *Jump v. McFarland*, 2021 WL 4597663, at *3. The district court "denied that aspect of the motion, reasoning in part that res judicata would not entitle McFarland to the relief based on a non-final, partial summary judgment rendered in favor of a third party." *Id.*

The next debate, in 2016, focused on the OCS-310 lease, with McFarland attacking the marshal's sale from 20 years earlier. In response, Jump cited two Louisiana statutes: LA. R.S. 9:5622 and LA. R.S. 9:5642. Section 5622 provides a two-year prescriptive period for claims arising out of "informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State." LA. R.S. 9:5622. Section 5642, on the other hand, provides that "[a]ctions to set aside sheriffs' deeds are prescribed by five years, reckoning from their date." LA. R.S. 9:5642. The district court found "under either statute, McFarland's alternative claim to nullify the marshal's sale as to his interest in the OCS-310 [l]ease could not survive a prescription defense." *Jump v. McFarland*, 2021 WL 4597663, at *3 (quotation omitted).

McFarland also challenged the timing of the Joslin lien's perfection, arguing that it did not attach to the first $277,774.68 of funds deposited into the court registry, therefore entitling McFarland to those proceeds with interest. In addition, McFarland argued that he was entitled to an $800,000 credit against monies due to Joslin. As a result of Joslin's failure to respond to requests for admission, the district court concluded that McFarland was

entitled to summary judgment on the claim that the Joslin lien was not perfected until April 2, 2004, as well as the $800,000 credit.

After a temporary ceasefire, the parties once again filed cross motions, which the district court addressed in its 2021 memorandum ruling. After concluding that Joslin had "a valid money judgment against McFarland and a valid lien on OCS-310," the district court denied all of Jump and American Milling's motions, as well as McFarland's, while granting Joslin's motion for partial summary judgment. *Id.* at *7. It subsequently issued a final judgment, which, among other things: (1) dismissed all of Jump and American Milling's claims with prejudice; (2) resolved Chevron's claim for payment and attorneys' fees and costs;[3] (3) nullified the 1996 marshal sale of McFarland's interest in OCS-310 to Jump; (4) held that Jump and American Milling "have no interest in OSC-310, and/or the funds in the registry of the Court"; and (5) dismissed all pending motions, including Jump and American Milling's motion for reconsideration. Jump and American Milling appealed.

## II.    Standard of review

We review the district court's grant of summary judgment de novo, *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 409 (5th Cir. 2020), applying the same standards as the district court, *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). We also review questions of law de novo,[4] though we review findings of fact for clear error.

---

[3] In 2005, Chevron, the operator of the OCS-310, interpleaded in the case, taking no position in the dispute, though it sought attorneys' fees and costs. The district court recognized Chevron "as a disinterested stakeholder." *Jump v. McFarland*, 2021 WL 4597663, at *3. We agree with this assessment.

[4] Accordingly, we review the res judicata and prescription issues de novo. *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (res judicata); *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000) (prescription).

*See McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). Motions for reconsideration, however, are typically reviewed for abuse of discretion. *See In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). But if materials attached to the motion for reconsideration "were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is *de novo*." *Id.*[5]

## III. Discussion

The parties do not seem to agree on the issues they are raising. At bottom, however, this case boils down to a priority dispute between Jump, American Milling, Joslin, and (to a lesser extent) McFarland. As we have previously held, "[b]ecause the registration of the Jump judgment was premature, it could not prime the FDIC's lien following the FDIC's reinscription of the mortgage and assignment in 1995." *McFarland II*, 243 F.3d at 892. Consequently, the Jump judgment was and is "subordinate" to Joslin's. *Id.* That made the nullification of the marshal's sale appropriate. *See F.D.I.C. v. McFarland*, No. CIV. 01-2039, 2003 WL 25776080, at *5 (W.D. La. July 30, 2003). Moreover, Jump never sought to register the Jump judgment after *McFarland II*. The result (and in accordance with the district

---

[5] Neither movant attached materials to the motion for reconsideration. Instead, Jump and American Milling sought to "incorporate the arguments" made in another previously filed document. It is questionable whether this action was sufficient to preserve the argument or change our typical abuse of discretion review. However, we need not decide the standard of review because, even if we assume arguendo that de novo review applies, Jump and American Milling's arguments fail for the reasons stated in this opinion. *See United States v. King*, 424 F. App'x 389, 395 (5th Cir. 2011) (per curiam) ("[B]ecause Whittle's challenge fails under either *de novo* or plain-error review, we shall assume that our standard of review is *de novo*.").

court's decree): *only Joslin* holds a valid mortgage and right to the seizure of the runs and minerals of OCS-310.

With that conclusion in mind, we turn to the issues raised by the parties.

## A.　Res Judicata

To begin, we reject the argument that Joslin or McFarland's claims against Jump and American Milling were barred by res judicata via *McFarland I*. When *McFarland I* was decided, it was not clear that Jump had prematurely recorded its judgment; indeed, we proceeded under that incorrect understanding. *See* 33 F.3d at 539. As we noted in our later *McFarland II* decision, "the Colorado litigation did not conclude until August 25, 1997—long after the FDIC's reinscription of the mortgage and assignment." 243 F.3d at 892. Until that date, it is questionable that the FDIC or McFarland would have *known* that Jump's registration was premature or possessed the proof needed to make that showing.

In any event, Jump and American Milling did not meet all the requirements of res judicata, which bars a subsequent action if:

> 1) the parties to both actions are identical (or at least in privity); 2) the judgment in the first action is rendered by a court of competent jurisdiction; 3) the first action concluded with a final judgment on the merits; and 4) the same claim or cause of action is involved in both suits.

*Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000). Assuming arguendo that the first three requirements are met, we disagree that Jump established the fourth—namely, that *McFarland I* involved the same claim or

cause of action.[6]  Indeed, we struggle to understand how *McFarland I* could share "the same nucleus of operative facts" with this action—as Jump and American Milling contend—when our 1994 decision primarily dealt with the enforcement "of a continuing guaranty agreement" and a ruling concerning the coverage of a "special mortgage," *McFarland I*, 33 F.3d at 535.

Because Jump and American Milling failed to establish all the elements of res judicata, they cannot prevail on this ground.

## B.    Prescription

Jump and American Milling's prescription arguments fare no better, at least against Joslin.  They argue that Joslin and McFarland's claims are barred by prescription because Louisiana law governs the relevant statute of limitations.

In Joslin's case, that is incorrect.  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") provides a minimum limitations period—three years for tort claims and six years for contract claims—and applies "to *any action* brought by the [FDIC] as conservator or receiver."  12 U.S.C. § 1821(d)(14) (emphasis added).[7]  It "mandates the application of federal law as the default limitations period." *F.D.I.C. v. RBS Sec. Inc.*, 798 F.3d 244, 260 (5th Cir. 2015).[8]  As the assignee of FDIC's

---

[6] Specifically, we disagree that "the fundamental issue" in *McFarland I* (i.e., our 1994 decision) "was the determination of which claimant . . . had the best claim to McFarland's Onshore Properties and to OCS-310."

[7] Importantly, this statute "does not presuppose anything other than that the FDIC-as-receiver has brought an action." *F.D.I.C. v. RBS Sec. Inc.*, 798 F.3d 244, 259 (5th Cir. 2015).

[8] State law can only apply if the period in question "fits the precise terms of the statute," which necessarily lengthens the limitations period. *RBS Sec. Inc.*, 798 F.3d at 260; *see* 12 U.S.C. § 1821(d)(14).  Because the Louisiana statute of limitations is shorter in this

interest, Joslin is entitled to the FIRREA statute of limitations. *See F.D.I.C. v. Bledsoe*, 989 F.2d 805, 811 (5th Cir. 1993) ("We hold that assignees of the FDIC and the FSLIC are entitled to the same six year period of limitations as the FDIC and the FSLIC."). Because Joslin's claims were brought within the six-year period,[9] prescription does not act as a bar.

The same cannot be said of McFarland, who cannot avail himself of the FIRREA and falls outside the Louisiana statute of limitations. To save his claims, McFarland primarily argues that Jump's premature registration created an "absolute nullity" that does not prescribe.

We need not weigh in on this particular issue, however. Whether or not McFarland is precluded from raising his claims is irrelevant because (like Jump and American Milling) McFarland's interest is subject to Joslin's valid lien. *See McFarland II*, 243 F.3d at 892. Therefore, McFarland's claims, to the extent they differ from Joslin's, are unnecessary for the resolution of this case, especially because both parties seek the same relief—*full affirmance* of the district court's judgment.

Accordingly, Jump and American Milling cannot prevail on their prescription arguments.

---

instance, it does not apply in this case. *See* La. R.S. 9:5622 (prescription after two or five years); La. R.S. 9:5642 (prescription after five years).

[9] It appears that Jump and American Milling disagree with the district court's reasoning in the 2003 order, which identified the "two classifications" of claims under § 1821(d)(14) and concluded that "Joslin's claims most easily fall within the designation of contract claims." *McFarland*, 2003 WL 25776080, at *4. We find no error with this conclusion. *Cf. In re Am. Rice, Inc.*, 448 F. App'x 415, 421 (5th Cir. 2011) (per curiam) (demonstrating how contracts are often considered in cases involving enforceable judgments); *Strouse v. J. Kinson Cook, Inc.*, 634 F.2d 883, 885 (5th Cir. Unit B Jan. 1981) (characterizing a consent decree as "a judgment" but construing it "for enforcement purposes as a contract").

## C.    Prematurity

Jump and American Milling's prematurity argument also fails. Specifically, they argue that Jump's premature registration, by itself, is not sufficient grounds for annulling the marshal sale. To support their argument, they cite a Louisiana Supreme Court case, *Alfano v. Franek*, 105 So. 598 (La. 1925).

It is true that the Louisiana Supreme Court held in *Alfano* that "[a] sale made under the execution of a writ or process prematurely issued cannot be annulled solely on that ground." *Id.* at 600. However, the sale at issue here was not annulled because the *execution* of the Jump judgment was premature; it was declared a nullity because the prematurity issue caused Jump to lose its priority status over Joslin (i.e., the *judgment itself* was premature). *F.D.I.C. v. McFarland*, 2003 WL 25776080, at *5. In other words, there was "something to be done in the lower court before the judgment could be executed"—namely, the rendering of a final judgment. *Alfano*, 105 So. at 600. Because prematurity was not the sole cause of the annulment of the sale—indeed, priority caused the problem—Jump and American Milling cannot prevail on this ground.

## D.    Jump and American Milling's Other Arguments

Jump and American Milling raise several other arguments relating to alleged transfers of interest, prescription of judgment, and extinguishment. We need not address these arguments as they are either forfeited,[10]

---

[10] At least one of Jump and American Milling's arguments, regarding wavier by the FDIC, was not presented in their opening brief on appeal. As we have previously held, "we do not consider issues raised for the first time in a reply brief." *United States v. Hodge*, 933 F.3d 468, 478 n.5 (5th Cir. 2019) (internal quotation marks and citation omitted).

inadequately briefed,[11] or lacking in merit.  In any event, because Jump failed to register the Jump judgment after our holding in *McFarland II*—though he was put on express notice to do so[12]—there is no indication he has any interest in the disputed lease.  Therefore, both Jump and American Milling lack standing to pursue their other claims.[13]  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he plaintiff must have suffered an 'injury in fact'—*an invasion of a legally protected interest*." (emphasis added)).

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment in all respects, including its resolution of Chevron's claims as a disinterested interpleader stakeholder.

---

[11] We note the conspicuous lack of citation to either the record or relevant authority for many of Jump and American Milling's arguments.  As we have previously held, "[w]e will decline to address an issue where an argument lacks citation to authority or references to the record."  *Castro v. McCord*, 259 F. App'x 664, 666 (5th Cir. 2007) (per curiam) (citing *United States v. Upton*, 91 F.3d 677, 684 n.10 (5th Cir. 1996); *L & A Contracting Co. v. S. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994); *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992)).

[12] In *McFarland II*, we specifically noted that we were "unprepared to view the conclusion of the Colorado litigation in 1997 as automatically rendering Jump's registered judgment final."  243 F.3d at 892 n.89.  However, on remand, Jump had "the opportunity to re-register his judgment."  *Id.*  He did not do so.

[13] American Milling cannot prevail where Jump failed.  Its rights are derivative of Jump and the Jump judgment. *McFarland*, 2021 WL 4597663, at *1–2 (explaining the origin of American Milling's interest).  Moreover, Jump's attempt to quitclaim his interest to American Milling failed because he purported to transfer rights he did not possess— namely, "[a]ll of the right, title and interest of *Rory S. McFarland* in and to OCS Lease 310 . . . . " *See* LA. CIV. CODE ANN. art. 2452 ("The sale of a thing belonging to another does not convey ownership.").