No. 4328.

CHARLES A. M. POUTZ v. AUGUSTE REGGIO, BLANCHIN & GIRAUD, Garnishees.

It has never been held that, to make a valid inscription of a conventional mortgage, an entire copy of the authentic act in which it is granted should be spread upon the public record. The object of registration is public notice, with reasonable certainty, of the substantial particulars of the mortgage ; and when this is done, the purpose of the law is satisfied.

The reinscription on the fourth of December, 1869, of a mortgage given in 1844, reinstated the inscription thereof, to take effect from the date of its inscription ; and as this reinscription took place anterior to the plaintiff's judgment, it follows that when the mortgaged property was sold under that judgment, it was first subject to the payment of the mortgage debt.

APPEAL from the Seventh District Court, parish of Orleans. *Collens*, J. *E. Howard McCaleb*, for plaintiff and appellee. *Sambola & Ducros*, for defendants and appellants.

WYLY, J. In 1867, the defendant, Auguste Reggio, sold to the plaintiff one-half of his sugar plantation in the parish of Plaquemines.

Subsequently there was a suit for partition, and the property was sold by order of court to effect the partition.

Out of the half of the proceeds coming to Auguste Reggio, the purchasers, Blanchin & Giraud, retained in their hands $14,900, the amount of a conventional mortgage given by Auguste Reggio to his brother, Edmond Reggio, in 1844.

The plaintiff subsequently obtained judgment against Auguste Reggio, caused execution to issue, and garnishment process to be served on Blanchin & Giraud. They answered the interrogatories, stating: that they held this $14,900, belonging to Auguste Reggio, in order to discharge the mortgage existing on the plantation in favor of Edmond Reggio; and that all the other funds of said Auguste Reggio, remaining in their hands at the time of the purchase, were paid over to him, and they are in no manner indebted to him.

The plaintiff then took proceedings to traverse these answers and to obtain judgment against said garnishees for the amount of his *fi. fa.*, making Octave Reggio, the curator of Edmond Reggio, who was interdicted, a party to the said proceedings.

The court came to the conclusion that the mortgage in favor of Edmond Reggio was perempted, and gave judgment requiring the garnishees to pay over to the sheriff the amount of the *fi. fa.* issued by the plaintiff.

The defendants and the garnishees objected to the form of the proceedings, and they contend that a revocatory action should have been resorted to, in order to set aside the mortgage and the judgment rendered thereon in favor of Edmond Reggio.

If the mortgage was never legally reinscribed since it was given in 1844, as appears by the evidence, it is without effect as to third persons, and it is no incumberance on the property in the hands of the garnishees.

As to the plaintiff, and as to the garnishees, the mortgage of Edmond Reggio is without effect for want of reinscription, and the latter has no preference on the funds of Auguste Reggio retained in the hands of said garnishees. The plaintiff, who has acquired the privilege of a seizing creditor on the funds by reason of the garnishment process, had no cause to bring a revocatory action to set aside the mortgage of Edmond Reggio, which was dead as to him for want of reinscription.

We therefore conclude that the court did not err in rendering the judgment appealed from.

Judgment affirmed.

----

ON REHEARING.

MORGAN, J. On the twenty-fourth of November, 1871, Poutz obtained two judgments against Auguste Reggio, one for $1047 75, with

legal interest from judicial demand, and the other for $6843 59, with eight per cent. interest from twenty-eighth December, 1867, less a credit of $1500, paid on the second February, 1869.

*Fi. fas.* issued on these judgments, and Blanchin & Giraud were made garnishees, and interrogatories were propounded to them. They answer and deny being indebted to Auguste Reggio in any sum of money, or that they have any property of any description in their hands belonging to him. Their answers were traversed, and Poutz affirms that they are false. He alleges that Blanchin & Giraud held $14,900 in their hands nominally to pay a certain mortgage and judgment in favor of Octave Reggio, in his capacity of curator to his brother Edmond Reggio, which sum is really the property of Auguste Reggio, his debtor; that the mortgage resulting from this judgment is null and void as against him; that when it, the mortgage, was reinscribed in 1869, it was barred by the prescription of ten and twenty years; that the consideration of the mortgage was the price of slaves, and therefore without validity; that the pretended judgment rendered in the suit of Octave Reggio, curator of Edmond Reggio *v.* Auguste Reggio, is also null and void, because the court which rendered it had no jurisdiction; because the proceedings were wholly *ex parte* and illegal; because it was rendered and signed at chambers, and out of term time, and was never read or entered upon the minutes of the court; because the judgment was rendered and signed on first February, 1871, while the petition praying for it was not filed until the fifth; that there was no suit pending when the judgment was signed, and that the subsequent filing of the petition could not give a retroactive effect to the judgment, which was of itself illegal; that the inscription of this judgment, its rendition and signature, was the result of a conspiracy and fraud between Octave Reggio, curator of his brother Edmond, Auguste Reggio, the defendant, and Blanchin & Giraud, the garnishees, for the purpose of putting Auguste Reggio's property beyond the reach of his creditors, and particularly to protect it against the claims of the plaintiff.

The evidence, consisting of the accounts between Blanchin & Giraud and Auguste Reggio, produced under a subpena *duces tecum* obtained by the plaintiff, establishes that when the interrogatories were propounded, Auguste Reggio was in debt to Blanchin & Giraud. It also established that at that time Blanchin & Giraud held in their hands $14,899 75, in the name of Octave Reggio, as curator of Edmond Reggio. The question which we have to decide is, to whom does this money belong? To Edmond Reggio or to Auguste Reggio? To make satisfactory answers to these questions, the facts upon which they are propounded, so far as they relate to the parties, must be stated.

The Pointe aux Chènes plantation, with the slaves thereon, was inher-

ited by the Reggios from their father and mother. It was sold in order to effect a partition. Auguste Reggio purchased it for $90,000. Among the children who inherited was Edmond Reggio, who was a minor at the date of sale. Auguste Reggio was his tutor. His interest in the succession of his parents amounted to $14,899 79. Auguste Reggio became his debtor for that sum, to secure which a special mortgage and vendor's privilege was reserved on the plantation sold. The sale took place, and the mortgage was recorded about the first April, 1844. At that time Edmond Reggio, as appears from the testimony, was about twenty years of age. This mortgage, it is contended, was reinscribed on the fourth December, 1869.

Edmond Reggio has been all his life insane. He was interdicted by judgment of the court of his domicile on the fifteenth January, 1870. Octave Reggio, his brother, was appointed his curator. He is made a party to these proceedings by the plaintiff. On the first February, 1870, Octave Reggio, in his capacity of curator to Edmond Reggio, obtained judgment, in favor of his ward and against Auguste Reggio, for $14,899 79, and his right of mortgage on the Pointe aux Chènes plantation was recognized. The suit was brought at the common domicile of all the parties, and in the parish where the property was situated. It was brought out of term time, and was decided in chambers, and upon the confession of the defendants. The petition upon which the judgment was rendered was not filed until the fifth February. On that day *fi. fa.* issued, and the property mortgaged was seized thereunder.

We must now return to the transactions between Auguste Reggio and Poutz, the plaintiff.

As we have before seen, Auguste Reggio became the owner of the plantation in question, subject to Edmond Reggio's mortgage, about the first April, 1844. He continued to be the sole owner thereof until the twenty-eighth November, 1867, when he sold the undivided half thereof to Poutz, the plaintiff, for $35,000 cash. In this act of sale it is recited that the mortgage of Edmond Reggio rested on the property, and Auguste Reggio bound himself to have it released. This he never did. On the contrary, he caused it to be reinscribed, in December, 1869. It is thus apparent that in November, 1867, Poutz knew that the property which he purchased was encumbered with a mortgage in favor of Edmond Reggio. On the sixteenth December, 1869, Poutz obtained a judgment against Auguste Reggio for the partition of the plantation (Pointe aux Chènes), held in common between them. In obedience to this judgment, the plantation was sold on the fifth February, 1870. It was on this day that Octave Reggio, curator, issued execution under the judgment which he had obtained against Auguste Reggio. The plantation was sold under the two *fi. fas.*, and was pur-

chased by Blanchin & Giraud. The curator dispensed the purchasers from paying the amount due to his ward in cash. At this sale, the purchase price was $47,000.

The purchasers reserved in their hands an amount sufficient to pay some incumbrances which rested upon the property, and about which there is no dispute, and paid to the sheriff $14,320 in cash, being the amount coming to Poutz. They also reserved $14,899 79 "with which to satisfy the privilege and mortgage of Edmond Reggio." All of which appears to have been done with the knowledge and consent of Poutz. Thus, when he purchased his interest in the Point aux Chènes plantation, he knew that it was incumbered with Edmond Reggio's privilege and mortgage ; and, when it was sold, he knew that the debt which it was given to secure remained unpaid. Although the amount which he had paid for his share of the plantation largely exceeded the debt due by his vendor to Edmond Reggio, and although his vendor had agreed to cause the mortgage by which it was secured to be released, he took no steps to compel him to comply with his contract. Thus he was reckless in purchasing property which was incumbered at the time of purchase, and careless in not seeing to it that the incumbrance was removed when he had the opportunity to do so. If he suffers, he has himself alone to blame. The first question which we are called upon to decide is, whether or no the reinscription of the mortgage of the first April, 1844, on the first December, 1869, reinstated it. Plaintiff contends, first, that it was not reinstated in the manner required by the law ; and, second, that it was barred by the prescription of ten and twenty years.

*First*—The mortgage is to be found, first, in the act of sale and partition between the heirs of the first April, 1844, in which the property is fully described, and in which it is declared: " Pour la part des mineurs Edmond et Octave Reggio, s'élevant à la somme de $29,790 50, le dit sieur acquéreur, en sa qualité de tuteur en prend charge. Pour garantir le paiement des dix billets ci-dessus décrits à leur échéance respective et l'avoir des dits mineurs Edmond et Octave Reggio, dans le produit de cette vente, l'habitation et les esclaves, objets de la présente vente, sont et demeurent spécialement hypothéqués, ainsi que pour tout intérêt éventuel qui pouvait résulter du non-paiement des dits billets et de l'avoir des dits mineurs.

On the same day a distinct mortgage on the same property was separately inscribed in the office of the Recorder of Mortgages, in book 4, folio 241, No. 860.

On its face the mortgage is perempted by the lapse of time. The curator, however, contends that it was reinscribed in the manner and form required by law.

For the plaintiff it is contended that the only evidence of its rein-

41

scription is to be found in the following entry made by the Recorder immediately under the original deed, in book D of 1844, viz: "Reinscribed at the request of Mr. Auguste Reggio, this fourth day of December, 1869;" signed, E. Butler, Recorder. This, he says, amounts to nothing. Of this opinion was the District Judge, and of the same opinion were we when the case was first presented to us, and so thinking we gave judgment in favor of the plaintiff. Upon the law, applied to this state of facts, our minds have undergone no change. But a further examination has satisfied us that we, as well as the District Judge, erred as to the facts.

The original mortgage, which is contained in the act of sale and partition, and in which the debt due to the minor and the mortgage given to secure the same, is specifically set forth, and in which the property mortgaged is fully described, was recorded on the first of April, 1844. Another recital of the same mortgage in which the debt due the minor and the property are described at length, and identified with the first act, was recorded on the same day in book 4, folio 241, No. 860. The reinscription was made on the fourth of December, 1869, in book D, No. 1708, folio 78. The two first named acts are in the French language, the third is in English. It commences: "Auguste Reggio, in favor of Edmond Reggio, as per act passed before Gilbert Leonard, then Parish Judge and *ex-officio* notary public in and for this parish, on the first day of April, 1844, to secure full and punctual payment of the sum of $14,899 79, being the share or portion accruing to said minor from the succession of Nicholas Reggio and Caroline Jorda, his deceased father and mother, specially mortgaged and hypothecated in favor of said minor." And here follows the description of the property, which description is a literal copy of the one in the act of the first of April, 1844, except as to the slaves which are not mentioned at all; as they did not exist at the time, there was no need to mention them. It was in fact the reinscription of the mortgage of 1844, and the recital of the Recorder that it was reinscribed at the request of Auguste Reggio, refers to the act of reinscription and not to the original mortgage. It can mean nothing else, as it is not found on the margin of the act of 1844, and is only found in the act of reinscription of the fourth of December, 1869. It is urged that under the decision in Shepperd *v.* Cotton Press, 2 An., the reinscription was not made in accordance with the law, because the entire act in which the mortgage is contained is not copied in full.

"It has never been held, that to make a valid inscription of a conventional mortgage, an entire copy of an authentic act in which it is granted should be spread upon the public record. The object of registration is public notice, with reasonable certainty of the substantial particulars of the mortgage; and when this is done, the purpose of

the law is satisfied. Suppose a mortgage creditor should go to the mortgage office and verbally state to the recorder all the essential particulars of the authentic act of mortgage or judgment under which he claimed, and the recorder, instead of requiring a copy of the act or judgment, as he might do (articles 3330, 3331), should inscribe the particulars as stated; this would be good. Such is the spirit of what we held in Ellis v. Sims, 2 An. 254;" Bonnafé v. Lane, 5 An. 225. The case supposed by Mr. Justice Slidell in the decision just quoted is the case at bar, except that here it is the debtor who acknowledges the debt and causes the inscription, instead of the creditor, and causes to be stated in full the original amount by him due, and describes critically the property mortgaged to secure its payment.

In the succession of Pate, 6 An. p. 242, Mr. Justice Slidell again said: "The principal objection to the sufficiency of the registry is that they did not cause the acts of mortgage to be inscribed in full, but merely inscribed certificates of the parish judge before whom the mortgages were executed, in which, respectively, he certifies that an act of mortgage had been executed before him, the material and substantial details of which are stated. * * * We have hitherto said that the object of registration is public notice, with reasonable certainty; and we can not sanction a construction which would avoid the registry of a mortgage upon the ground that the entire deed of mortgage was not spread *verbatim* and *literatim* upon the public records."

In Rogers v. Chander, 6 An. 349, it was said: "It has been held in relation to the inscription of mortgages that although the law requires a copy of the act offered for record to be presented to the recorder of mortgages, it is not indispensable to the validity of the inscription that the entire act should be copied in the books of the recorder; and that a declaration that the mortgage exists, with a statement of dates and amounts, and a full description of the property, are sufficient." These cases were all determined by the court which decided the Shepperd case, and are not considered as interfering with the doctrine of registry as laid down in that case. With them before us, we think we may say that in deciding that where a tutor causes the mortgage he has given in favor of one who has been his ward to be reinscribed— the reinscription containing the date of the debt, and the amount thereof in principal, together with a description of the property subject to the mortgage upon the books of the recorder of mortgages, the law has been complied with—we are only following the line of safe precedents which has been marked out by our predecessors, whose opinions upon this subject entirely agree with our own.

*Second*—Was the debt, which the mortgage was given to secure, prescribed at the time the mortgage was reinscribed?

That it existed at one time is not disputed. That Poutz knew it, is apparent from the fact that it is recited in the deed by which he became part owner of the property which was mortgaged to secure its payment. Auguste Reggio swears that he constantly acknowledged this debt. Octave Reggio swears to the same thing. They both swear that it was often acknowledged in the presence of Poutz; and this evidence is not contradicted    This constant acknowledgment kept the debt alive. The reinscription of the mortgage of 1844, on the fourth December, 1869, re-established the inscription, to take effect from the date of its reinscription; and as this reinscription took place anterior to Poutz' judgment, it follows that when the property was sold under that judgment, it was first subject to the payment of this debt.

The next objection to the mortgage is, that it was given to secure the price of slaves, and is therefore immoral, illegal and without any validity whatever. Counsel for Edmond Reggio admits that the debt in question was partly the price of slaves—that is to say, to the extent of one-third of the amount. But he contends that the question of consideration of the sale of slave property is finally settled in favor of the bearer of such claims by the decisions of the Supreme Court of the United States, in the cases of White v. Hart and Osborn v. Nicholson, 13 Wallace, 647, 654. The interests of the parties in the case before us do not make it necessary that we should discuss this question.

Since the year 1855, all debts bear interest at the rate of five per cent. per annum. The relative price of the slaves on the Pointe aux Chênes plantation to the land was, as it is established by the testimony, one-third for the slaves, two-thirds for the land. The price of the land, therefore, would be about $13,000. The interest on this sum at five per cent., since 1855 to the day of sale to Blanchin & Giraud—fifth February, 1870—makes the debt due on the land alone far exceed the amount in the garnishees' hands. This law we feel bound to apply to the protection of the litigant before us, although it has not been invoked in his behalf.

The conclusions we have arrived at upon these points make it unnecessary for us to consider the question of the validity of the judgment obtained by Octave Reggio, curator, against Auguste Reggio; and so we are enabled to prevent the ruin of one who, once a minor, under a tutor, and always an insane person, and thus doubly the ward of the courts and entitled to their protection, without being called upon to review the settled jurisprudence of the State with regard to what is termed the slave consideration in contracts, and without changing in any manner our own decisions upon the subject of the reinscription of mortgages.

It is therefore ordered, adjudged and decreed that the judgment heretofore rendered by us be avoided, annulled and reversed. And

it is now ordered, adjudged and decreed that the judgment of the District Court be avoided, annulled and reversed, and that there be judgment in favor of the garnishees, Blanchin & Giraud, and Octave Reggio, curator of Edmond Reggio, and that plaintiff pay costs in both courts.