REVISED, MARCH 29, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30756

_____

FEDERAL DEPOSIT INSURANCE CORP.,
                              Plaintiff,

                 versus

RORY S. MCFARLAND, ET AL.,
                              Defendants.

TEXACO, INC.,
                              Defendant - Third Party Plaintiff,

                 versus

PREMIER VENTURE CAPITAL CORP.; DAVID L. JUMP,
                              Third Party Defendants - Appellees,

                 versus

DENNIS JOSLIN CO., L.L.C.,
                              Movant - Appellant.

_____

Appeal from the United States District Court
For the Western District of Louisiana

_____

February 28, 2001

Before JOLLY, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    This appeal turns in part on whether the Federal Deposit
Insurance Corporation (FDIC) as receiver must abide by Louisiana

reinscription rules to preserve its liens. The district court determined that the mortgage and assignment held by the assignee of the FDIC, the Dennis Joslin Company ("Joslin"), lost priority status because of the FDIC's failure to reinscribe the mortgage within the statutory period. The court found that two creditors, Bank One and David L. Jump, had valid liens that were senior to the FDIC's interest.

In addition to its assertions based on Louisiana law, Joslin argues that the FDIC is not bound by reinscription requirements. The argument is that either the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, FIRREA, or federal common law insulates the FDIC from state-law reinscription requirements. We are not persuaded and affirm this holding of the district court. We also conclude that Jump's lien was based on a judgment that was not final when registered. We reverse the district court's contrary holding and remand.

I

On November 30, 1984, Rory S. McFarland pledged a note in the amount of $2.5 million to the Bank of Commerce of Shreveport, Louisiana.[1] McFarland secured this note with a mineral lease mortgage and assignment, an "assignment of runs," of his interest

---

[1] Although McFarland executed other mortgages in favor of the Bank of Commerce, none of these instruments is relevant to the instant appeal.

in the oil, gas, and minerals produced from the mortgaged leasehold and mineral interests.[2]

A casualty of the misfortunes that befell banking in the 1980s, the Bank of Commerce failed in 1986. The FDIC was appointed receiver and took over the bank's assets, including the pledged 1984 note and the assignment.[3]

In August 1990, Bank One Equity Investment, Inc., formerly Premier Venture Capital Corporation, obtained judgment, "the Bank One judgment," against McFarland in Louisiana state court. Bank One recorded this judgment in various Louisiana parishes between March and August of 1991.

On October 1, 1991, David L. Jump obtained a judgment against McFarland, "the Jump judgment," in the United States District Court for the Western District of Colorado. Jump registered the judgment in the Western District of Louisiana on June 26, 1992. In June and July of 1992, Jump recorded the judgment in various Louisiana parishes.

---

[2] The assignment, which was executed on the same day as the note, encompassed McFarland's right, title, and interest "in and to the oil, gas and other minerals, of whatever nature and kind whatsoever, situated in and under and which may be produced from the land affected by the leases described" in a schedule attached to the mortgage.

[3] We will refer to the 1984 mortgage note as the 1984 mortgage and the 1984 mineral lease mortgage and assignment as the 1984 assignment. We will also refer to both instruments jointly as the 1984 mortgage and assignment.

On October 31, 1991, the FDIC filed suit to collect the debt owed by McFarland to the Bank of Commerce, including the 1984 mortgage and assignment. Bank One and Jump intervened in the case[4] seeking the proceeds from the mineral leases that had been paid into the court registry.[5] They claimed that the 1984 assignment did not encompass a specific offshore lease, OCS-310.

In 1993, the district court ordered McFarland to pay the FDIC from the proceeds in the court registry and recognized the 1984 mortgage as the first lien. The court also held that the 1984 assignment did not include OCS-310 and ordered McFarland to pay the proceeds of that lease to Bank One and Jump.[6] The FDIC recorded the 1993 judgment of the district court in various Louisiana parishes

---

[4] Bank One and Jump agreed to combine their efforts in the ensuing ranking dispute.

[5] Texaco, Inc. had deposited proceeds from the mineral leases into the court registry. The FDIC had joined Texaco as a party given its status as the operator of most of the encumbered mineral interests. The FDIC had also joined as parties Russell Long and Palmer Long, who were trustees of certain expired trusts of which McFarland had been beneficiary. Prior to the 1993 action, the Longs periodically received funds from Texaco and distributed them to McFarland.

[6] On October 23, 1995, Bank One received $300,000 from the funds deposited in the court registry that were traceable to the OCS-310 lease. Bank One then released its judgment as to McFarland's interest in the OCS-310 lease. Jump initiated foreclosure proceedings and purchased that leasehold interest at a sale held by the United States Marshal. Jump also received the balance of the funds on deposit in the registry attributable to the OCS-310 lease.

4

between November 2, 1993, and November 8, 1993. This Court subsequently affirmed the judgment in relevant part.[7]

The FDIC reinscribed the 1984 mortgage and assignment in various Louisiana parishes in July 1995. In 1997, the FDIC assigned the mortgage and assignment to the Dennis Joslin Company.

In 1998, Joslin filed a motion for issuance of a writ of execution and for foreclosure of the property subject to the 1984 mortgage and assignment. Joslin also sought distribution of the funds that had accumulated in the court registry. The district court issued the requested writ of execution and the United States Marshal for the Western District of Louisiana seized the property. The marshal advertised the sale of the property and set October 28, 1998 as the date of sale.

Through successive filings on October 23 and 26, 1998, Jump objected to Joslin's actions. Jump contended that the FDIC's failure to reinscribe the 1984 mortgage and assignment within ten years of its execution resulted in a loss of ranking. Jump argued that the 1991 Jump judgment consequently had priority as to both the mineral interests and the proceeds deposited in the court registry. The court postponed the marshal's sale.

In June 1999, the district court entered another judgment holding that Louisiana law required the FDIC to reinscribe the 1984

---

[7] *See Federal Deposit Ins. Corp. v. McFarland*, 33 F.3d 532 (5th Cir. 1994).

mortgage and assignment by November 30, 1994.[8] The FDIC's reinscription in 1995 was therefore untimely, depriving its assignee, Joslin, of priority rank. The court consequently ranked the Bank One judgment first, the Jump judgment second, and the FDIC's 1984 mortgage and assignment third. Joslin appeals this determination.

## II

Joslin contends, first, that this case is moot.[9] Joslin points to the 1993 judgment, in which the district court declared the FDIC to be "the owner and entitled to all funds paid into the Registry

---

[8] *See* La. Civ. Code Ann. art. 3369 (West 1992) (requiring the reinscription of a mortgage within ten years of its creation). Although the statute was amended in 1993, *see* 1992 La. Acts No. 1132, these amendments only apply to mortgages created on or after the effective date of January 1, 1993. *See id.* at § 7; *Seal v. Crain*, 767 So. 2d 798, 801 (La. App. 1st Cir. 2000). We note that a pledge of minerals, or assignment of runs, faces the same ten-year reinscription requirement as the mortgage it secures. *See* La. Rev. Stat. Ann. § 31:202 (West 1989). Contrary to Joslin's assertions, the 1990 repeal of certain provisions of the Louisiana Mineral Code does not affect this case. Revised Article 204 of the Mineral Code, La. Rev. Stat. Ann. § 31:204 (West Supp. 2000), does not apply to pledges entered into before the effective date of Chapter 9 of the Louisiana's Commercial Laws. *See* 1989 La. Acts 137, § 20. The 1984 pledge at issue in this case was executed prior to this effective date and is therefore governed by former Article 202 of the Mineral Code.

[9] *See Bayou Liberty Ass'n v. United States Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir. 2000) ("We must address the issue of mootness first, because to qualify as a case for federal court adjudication, a case or controversy must exist . . . . Whether a case is moot is a question of law that we resolve de novo.").

of this Court." Joslin argues that, except for the funds derived from the OCS-310 lease, the FDIC was declared owner of all past *and* *future* proceeds from the leases in question. Because the 1993 judgment vested the FDIC with priority lien status, Joslin contends that the reinscription question was rendered moot.[10]

Joslin's position is meritless. There is a live case or controversy regarding the meaning of the 1993 judgment—the extent to which it encompasses future, as well as past, proceeds deposited in the registry. Moreover, we note that Louisiana law mandates the reinscription of mortgages and assignments within a ten-year period.[11] As the Louisiana Supreme Court has held, "[a] litigation between the mortgage creditors does not dispense from reinscription. . . . The inscription must continue until the proceeds of the property mortgaged are reduced to possession."[12] The 1993 judgment did not then implicitly end the FDIC's continuing obligation to reinscribe the mortgage. Moreover, the FDIC's failure to reinscribe the mortgage did not occur until 1994, and the issue

---

[10] *See Umanzor v. Lambert*, 782 F.2d 1299, 1301 (5th Cir. 1986) (discussing Article III case or controversy requirements and noting that, "[i]f the subject of an appeal has become moot, the appellate court may not decide it").

[11] *See* La. Civ. Code Ann. art. 3369 (West 1992); La. Rev. Stat. Ann. § 31:202 (West 1989).

[12] *Shepherd v. The Orleans Cotton Press Co.*, 2 La. Ann. 100, 111 (La. 1847).

7

was not properly before the district court.[13] Even if we were to interpret the 1993 judgment as declaring the FDIC to be owner of all future proceeds deposited in the court registry, the judgment would still not exclude the possibility that other circumstances—e.g., failure to reinscribe—might deprive the FDIC of its lien. The instant appeal therefore presents a live controversy.[14]

III

The larger question posed by this case is whether Louisiana reinscription law applies to mortgages held by the FDIC. The parties urge three different means of resolving this question. First, Jump[15] contends that the 1993 judgment disposed of the reinscription question and is the "law of the case." Second, Joslin

---

[13] Because the facts litigated in the 1993 judgment differ from those in the 1999 judgment, collateral estoppel is of no assistance to Joslin. *See Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

[14] Joslin also frames its mootness argument in terms of the law of the case doctrine. Joslin contends that the 1993 judgment granted it (through the FDIC) ownership of the past and future proceeds from the leases. It argues that this decision was binding on the 1999 proceedings. This argument fails for the same reasons as Joslin's mootness claim. The 1993 judgment did not preclude the possibility that other circumstances could strip Joslin of its ownership interest. Moreover, as discussed *infra*, we are skeptical as to whether or not the 1993 and 1999 proceedings constitute different phases of the same "case." *Cf. United States v. Lawrence*, 179 F.3d 343, 351 (5th Cir. 1999).

[15] Jump is the only party besides Joslin participating in this appeal. Pursuant to a prior compromise and settlement agreement, Jump is participating on behalf of both himself and Bank One.

8

argues that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989[16] frees the FDIC from state-law reinscription requirements. If FIRREA does not apply, Joslin asserts that federal common law governs the FDIC, thereby precluding the imposition of state reinscription obligations. We address each contention in turn.

A

Jump argues that the district court in the 1999 case was bound by the 1993 judgment, which provided the "law of the case." Under the "law of the case" doctrine, "a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation."[17] Where a final judgment is entered, the case appealed, and the case remanded, a trial judge must adhere on remand to the rulings it made in the case before appeal, assuming that the appellate court has not overturned the rulings.[18] Moreover, an appellate court is generally

---

[16] Pub. L. No. 101-73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.).

[17] *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1031 (7th Cir. 1997) (citations and quotations omitted); *see also United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (West Supp. 2000).

[18] *See Roboserve*, 121 F.3d at 1031.

precluded from reexamining issues decided in a prior appeal.[19] This doctrine applies regardless of whether the issue was decided expressly or by necessary implication.[20]

Jump notes that the 1993 judgment found a mortgage and assignment issued by McFarland in 1981 to be "preempted." He contends that the district court found the 1981 mortgage to be preempted because of the FDIC's failure to reinscribe the original mortgage within a ten-year period. Jump concludes that the district court thereby recognized that the FDIC must comply with Louisiana reinscription requirements. Jump concedes that the 1993 judgment did not and could not address the FDIC's subsequent failure to reinscribe the pledged 1984 mortgage. However, he asserts that the 1993 judgment enunciated a legal principle that was binding on the 1999 judgment.[21] As we understand it, he contends that the 1993 case was merely a prior stage of the same litigation, and that the district court's prior judgment bound it in future phases of the same case.[22]

---

[19] *See Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1150 (5th Cir. 1993).

[20] *See id.*

[21] Jump does not argue that this Court's prior decision provides the law of the case. Nothing in our 1994 decision implied an affirmation of the district court's ruling on the reinscription issue. Indeed, this Court did not even discuss the 1981 mortgage. Failure to address an issue decided below does not necessarily imply its affirmation.

[22] *See Roboserve*, 121 F.3d at 1031.

10

On the face of the matter it is doubtful whether the 1993 and 1999 proceedings constitute the same "case." It is true that the same trial judge presided at both proceedings and that the two judgments had the same case number and caption. It is equally true, however, that the 1993 decision was a final judgment and the 1999 case was not decided on remand from our 1994 decision. By then, several facts had changed: Joslin became the holder of the FDIC's 1984 mortgage and assignment, and the FDIC failed to reinscribe the mortgage.[23]

Even if we assume that the two rulings were part of the same "case," we do not read the 1993 judgment as advocated by Jump. The 1993 judgment does not explain its finding of preemption. In a pre-trial order adopted by the district court in 1993, the court recognized as a contested issue of law "[w]hether the 1981 FDIC mortgage is *unenforceable* because it was not reinscribed" (emphasis added). The court also noted two other objections to the 1981 mortgage: (1) whether the mortgage was "unenforceable" because it failed to comply with La. Rev. Stat. § 30:138; and (2) whether failure to fill in the effective date on the mortgage similarly rendered it "unenforceable." The record does not reflect any

---

[23] *Cf. United States v. Lawrence*, 179 F.3d 343, 351 (5th Cir. 1999) (finding that law of the case doctrine did not apply, as a post-conviction motion is a separate "case" from the initial proceeding resulting in conviction).

further discussion by the parties of the reinscription issue prior to the 1993 judgment.

The 1993 judgment failed to unambiguously affirm the FDIC's obligation to abide by Louisiana reinscription law. While Louisiana cases occasionally employ the term "preemptive" to describe the period in which a mortgage must be reinscribed,[24] this language differs from the court's 1993 pre-trial order, "unenforceable." Given these uncertainties, we are not prepared to conclude that the law of the case doctrine barred the district court from considering the reinscription issue.[25]

B

Joslin argues that FIRREA, 12 U.S.C. § 1825(b)(2), protects the FDIC from state-law reinscription requirements.[26] The statute provides:

> When acting as a receiver, the following provisions shall apply with respect to the Corporation: . . . No property of the Corporation shall be subject to levy, attachment,

---

[24] *See State* ex rel. *Meriwether v. City of Shreveport*, 91 So. 678, 679 (La. 1921); *Vautrain v. Neel*, 163 So. 555, 557 (La. Ct. App. 1935).

[25] *See Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1031-32 (7th Cir. 1997) (finding that the law of the case doctrine did not apply, as scant references in the record were insufficient to establish that the district court or appellate court prior to remand had decided the issue).

[26] This Court applies de novo review to questions of law. *See St. Martin v. Mobil Exploration & Prod. U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000).

12

garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.[27]

Joslin asserts that the plain meaning of the statute compels the conclusion that Louisiana reinscription law would not apply to the FDIC.

The Louisiana reinscription statute may effect a re-ranking of liens. Failure to reinscribe a mortgage within the ten-year period specified in Article 3369 of the Louisiana Civil Code does not invalidate the mortgage as between the contracting parties.[28] Untimely reinscription does, however, render the initial inscription of the mortgage ineffective against third parties. Third-party creditors then have priority over the mortgage that was not timely reinscribed. Any attempt to reinscribe after the ten-year period can not alter this change in seniority. Late reinscription merely crystallizes the ranking in effect at the time of the reinscription.[29]

Although failure to reinscribe a mortgage may result in the application of an "involuntary lien" to FDIC property, FIRREA does

---

[27] 12 U.S.C. § 1825(b)(2) (2000).

[28] *See Security Nat'l Trust v. Alexander*, 621 So. 2d 30, 31 (La. App. 2d Cir. 1993).

[29] *See Executors of Liddell v. Rucker*, 13 La. Ann. 569, 571 (La. 1858); *Alexander*, 621 So. 2d at 31. The 1984 assignment faces an equivalent reinscription law. *See* La. Rev. Stat. Ann. § 31:202 (West 1989) (articulating a ten-year reinscription period and noting that the "effect of registry" of a pledge terminates after that period).

not provide relief. We read the provisions of FIRREA in context, cognizant of the statute's structure and purpose.[30] Passed in the wake of a national crisis in the banking and savings-and-loan industries, FIRREA was intended to promote stability, economic recovery, and increased public confidence.[31] To this end, the FDIC was empowered to serve as receiver for failed financial institutions.[32] Section 1825 was enacted to facilitate the FDIC's efforts as receiver and was intended to "protect assets involuntarily acquired by the FDIC from losing value because of its lack of knowledge about local and state tax liens."[33]

Before the passage of FIRREA, section 1825 only included the provision currently codified as 1825(a), which articulated the FDIC's exemption from taxation while acting in its corporate capacity.[34] FIRREA added subsection (b) to extend this exemption to the FDIC's role as receiver.[35] We are persuaded that section

---

[30] *See Lady v. Neal Glaser Marine, Inc.*, 228 F.3d 598, 609 (5th Cir. 2000).

[31] *See Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686, 690 (5th Cir. 1998); H.R. Rep. No. 101-54(I), at 294, 307 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 90, 103; H.R. Conf. Rep. No. 101-222, at 393 (1989), *reprinted in* 1989 U.S.C.C.A.N. 432, 432.

[32] *See* 12 U.S.C. §§ 1821(c)(6)(B)(ii) (2000).

[33] *Verspoor*, 145 F.3d at 689-90.

[34] *See* 12 U.S.C. § 1825 (1988).

[35] *See Irving Indep. Sch. Dist. v. Packard Props.*, 970 F.2d 58, 61 (5th Cir. 1992).

14

1825(b)(2) merely extends the general exemption of the FDIC from taxation to the receivership context. As a House Report accompanying FIRREA indicated:

> [Section 1825(b)(2)] clarifies the existing provision specifying that the only kind of non-Federal tax to which the FDIC, in its corporate capacity or as receiver, is subject is a tax on real property. The exemption from taxation extends to the [FDIC's] property and operations in whatever capacity it is functioning, *and particularly as receiver* for a national bank, a branch of a foreign bank, or a savings association (but not as a receiver for a State bank under State law).[36]

The title to section 1825 confirms the arrangement established by FIRREA.[37] Section 1825 is labeled, "Exemption from taxation; limitations on borrowing." FIRREA added the heading, "General rule," to subsection (a).[38] The heading which FIRREA designated for subsection (b), "Other exemptions," confirms that section 1825(b)(2) was intended to address other exemptions from taxation than those stipulated in the "general rule." The "other exemption" at issue in this case is the rule precluding the attachment of an involuntary tax lien to FDIC property. The structure, title, and purpose of the statute compel this conclusion.

---

[36] H.R. Rep. No. 101-54(I), at 337, *reprinted in* 1989 U.S.C.C.A.N. at 133 (emphasis added).

[37] *See United States v. Marek*, 2001 WL 10561, at *8 (5th Cir. 2001) (affirming the value of examining the title of a disputed provision where ambiguity is present).

[38] *See* FIRREA § 219, 103 Stat. 183, 261 (codified as amended at 12 U.S.C. § 1825(a)).

This Court has consistently interpreted section 1825(b)(2) in this fashion. We have found that this section prohibits state and local taxing authorities from foreclosing on property subject to an FDIC lien without its consent.[39] This Court has not applied the exemption of section 1825(b)(2) to liens not attached by state and local taxing authorities.[40] Indeed, we have repeatedly found that section 1825(b)(2) "represents the express will of Congress that the FDIC must consent to any deprivation of property *initiated by a state*."[41]

Joslin attempts to apply this exemption to the intervention initiated by Jump and Bank One. As Jump and Bank One are private entities possessing normal judgment liens, however, their claims are not barred by section 1825(b)(2). We therefore find that FIRREA does not preclude the application of Louisiana reinscription law to the FDIC's property. Nothing in FIRREA prevents Louisiana law from recognizing either the FDIC's obligation to reinscribe mortgages or

---

[39] *See Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686, 689-91 (5th Cir. 1998); *FDIC v. Lee*, 130 F.3d 1139, 1143 (5th Cir. 1997); *Donna Indep. Sch. Dist. v. Balli*, 21 F.3d 100, 101 (5th Cir. 1994); *Matagorda County v. Russell Law*, 19 F.3d 215, 222 (5th Cir. 1994); *see also Simon v. Cebrick*, 53 F.3d 17, 22 (3d Cir. 1995).

[40] Our Court is consequently in disagreement with the Tenth Circuit. *See GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853 (10th Cir. 1993). We note that the *GWN* court failed to address whether the scope of section 1825(b)(2) was restricted to liens held by state and local taxing authorities.

[41] *Lee*, 130 F.3d at 1143 (emphasis added); *First State Bank-Keene v. Metroplex Petroleum Inc.*, 155 F.3d 732, 738-39 (5th Cir. 1998).

the loss of ranking suffered by the FDIC if it fails to meet this obligation. FIRREA only prohibits state and local entities from taking advantage of the FDIC's failure to reinscribe by attaching liens and other instruments to satisfy tax judgments. As these circumstances are not present here, Joslin's argument fails.[42]

---

[42] Joslin also invokes 12 U.S.C. § 1821(d)(13)(C), which provides: "No attachment or execution may issue by any court upon assets in the possession of the receiver." Courts have construed this provision as prohibiting the attachment of liens and judgments against the property of the FDIC or Resolution Trust Corporation (RTC) when they are acting as receivers. *See Resolution Trust Corp. v. Cheshire Mgmt. Co.*, 18 F.3d 330, 335 (6th Cir. 1994); *GWN Petroleum*, 998 F.2d at 856-57; *Cambridge Capital Corp. v. Halcon Enters., Inc.*, 842 F. Supp. 499, 505 (S.D. Fla. 1993). However, none of these decisions has applied this provision to the assignee of the FDIC or RTC. Indeed, the plain language of section 1821(d)(13)(C) affirms that the provision applies only while the assets are "in the possession" of the FDIC/RTC. While it is generally true that "an assignee takes all of the rights of the assignor, no greater and no less," *In re New Haven Projects Ltd. Liability Co. v. City of New Haven*, 225 F.3d 283, 290 n.4 (2d Cir. 2000) (quotations omitted), no authority supports the proposition that section 1821(d)(13)(C) creates assignable rights. *See id.*

At oral argument, Joslin raised for the first time the contention that 12 U.S.C. § 1821(d)(13)(D), in conjunction with section 1821(d)(13)(C), deprived the district court of jurisdiction to decide the matter. Section 1821(d)(13)(D), which is entitled, "Limitation on judicial review," states:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over - (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). This provision merely requires claimants to assets in possession of the FDIC to exhaust administrative remedies prior to filing in court. The circuits

C

Joslin argues, in the alternative, that federal common law—and not Louisiana reinscription law—governs the status of FDIC liens. In *United States v. Kimbell Foods, Inc.*,[43] the Supreme Court articulated the general framework for determining whether to apply federal common law or state law. The *Kimbell Foods* case addressed the question of whether liens arising from federal loan programs take precedence over private liens. The Court noted that, in the absence of a federal statutory provision setting priorities, it must first decide whether federal or state law provides the "rule of decision" for the controversy.[44] If a federal rule of decision

---

agree on this point. *See*, *e.g.*, *American First Federal, Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999); *FDIC v. Scott*, 125 F.3d 254, 258 (5th Cir. 1997); *Nat'l Union Fire Ins. v. City Sav.*, 28 F.3d 376, 393 (3d Cir. 1994); *RTC v. Midwest Fed. Sav. Bank*, 36 F.3d 785, 791 (9th Cir. 1993). The record does not reveal that administrative claim remedies were pursued prior to either the 1993 or 1999 action. This Court is precluded from collaterally attacking the 1993 decision. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940); *Jack's Fruit Co. v. Growers Mktg. Serv., Inc.*, 488 F.2d 493, 494 (5th Cir. 1973) (per curiam). Failure to pursue remedies in the 1999 case is of no moment, however, as the FDIC was no longer a party. It would be absurd for us to interpret section 1821(d)(13)(D) as assignable to the current holder, Joslin. The claim procedures articulated in 12 U.S.C. § 1821(d)(5)-(11) are predicated on the FDIC's possession of the property in question. When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply to the property. Thus, section 1821(d)(13)(D) did not deprive the 1999 court of jurisdiction. As noted above, section 1821(d)(13)(C) is not a jurisdictional provision.

[43] 440 U.S. 715 (1979).

[44] *Id.* at 718.

18

is appropriate, the court must determine whether to fashion a uniform federal standard or to incorporate state commercial law.[45] The Court's inquiry was guided by consideration of three factors: (1) the federal interest in uniform federal rules; (2) whether application of state law would frustrate the specific objectives of the federal program at issue; and (3) to what extent application of a federal rule would disrupt commercial relationships predicated on state law.[46] In subsequent cases, the Court has held that federal law provides the "rule of decision" in lieu of state law only where there is a "significant conflict between some federal policy or interest and the use of state law."[47] The Supreme Court has observed that such a conflict is a "precondition for recognition of a federal rule of decision," and has noted that such cases are "few and restricted."[48]

We find that state law provides the rule of decision in this case. FIRREA is a comprehensive and detailed statutory scheme.[49] The Supreme Court has stated that we are not to "adopt a court-made rule to supplement federal statutory regulation that is

---

[45] *Id.*

[46] *Id.*

[47] *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (quotations omitted).

[48] *Id.*

[49] *See id.* at 85 (describing FIRREA as "comprehensive legislation"). Joslin concedes that FIRREA is "meticulous and comprehensive."

19

comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law."[50] Joslin does not articulate a valid basis for overcoming this presumption.

Moreover, the FDIC in this case acts not in its corporate capacity, but as receiver for a private bank. This Court has followed the Supreme Court in recognizing that "the capacity in which the FDIC acts may have a determinative impact on whether a state or federal rule should control."[51] As receiver for the Bank of Commerce, the FDIC's rights and liabilities derive from a private lien held by a private bank. Precedent confirms that the FDIC's actions as receiver do not implicate the concerns articulated in cases such as *Kimbell Foods*.[52] As the FDIC's actions as a receiver do not concern the "rights of the United States in a nationwide federal program,"[53] state law normally supplies the rule of decision.[54]

---

[50] *Id.*

[51] *Davidson v. FDIC*, 44 F.3d 246, 251 (5th Cir. 1995); *see O'Melveny & Myers*, 512 U.S. at 88.

[52] *See Atherton v. FDIC*, 519 U.S. 213, 225 (1997); *O'Melveny & Myers*, 512 U.S. at 88; *Ferguson v. FDIC*, 164 F.3d 894, 897-98 (5th Cir. 1999); *Davidson*, 44 F.3d at 251.

[53] *Davidson*, 44 F.3d at 251.

[54] *See id.* at 250 ("Absent [a significant federal proprietary interest] . . . or some express congressional policy to the contrary, state law governs state-law rights held by the FDIC in its limited capacity as the receiver of a nonfederal entity.").

We also do not find that application of state law would create a "significant conflict" with the FDIC's putative interest in the application of a uniform national standard.[55] Joslin points to provisions in FIRREA which protect the FDIC from the effects of state law,[56] yet offers no reason why these protections—none of which is relevant to the reinscription issue at hand—imply the need for a uniform national standard.[57] While uniformity of law would free the FDIC from the obligation of consulting state law to determine reinscription and lien priority rules, this requirement is one of the "ordinary consequences" of operating as receiver.[58] Disposing of the assets and obligations of a failed financial institution necessarily requires an individualized inquiry into the effects of local law.[59] FIRREA lightens this burden considerably by

---

[55] *See Kimbell Foods*, 440 U.S. at 728-29.

[56] *See*, *e.g.*, 12 U.S.C. § 1825; *see also Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1249 (5th Cir. 1990) (finding that the FDIC enjoys holder in due course status as a matter of federal common law, regardless of whether it acts in a corporate or receivership capacity).

[57] *See Atherton v. Federal Deposit Ins. Corp.*, 519 U.S. at 218 ("Nor does the existence of related federal statutes automatically show that Congress intended courts to create federal common-law rules, for 'Congress acts . . . against the background of the total corpus juris of the states.'") (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966)); *see also O'Melveny & Myers*, 512 U.S. at 86-87.

[58] *See O'Melveny & Myers*, 512 U.S. at 88.

[59] *See Kimbell Foods*, 440 U.S. at 729-33 (noting that adherence to state-law lien priority rules would not unduly impede the operations of the Small Business Administration (SBA), given that

protecting the FDIC from the effect of state law in various respects. Joslin provides no compelling reason for this Court to extend these protections. Nor does it offer any limiting principles were we to proceed down that road, demonstrating the "runaway tendencies of 'federal common law.'"[60]

Joslin articulates no significant federal policy or interest that would be jeopardized by exposure to reinscription requirements. There is a candidate. FIRREA was "designed in part to facilitate the efficient and speedy recovery of the assets of . . . failed [financial institutions]."[61] Given the need to market occasionally large quantities of assets, the FDIC prefers to sell assets without the risk of losing its priority position. While we are not unsympathetic to the bureaucratic limitations of the FDIC, we fail to see how the state-law requirements at issue pose a "significant conflict" with the federal interest in effectively disposing of the assets at the FDIC's disposal.

Precedent also leaves little doubt that a federal agency's interest in preserving priority lien status is insufficient to render state law inapplicable. Although *Kimbell Foods* applied a federal rule of decision, it incorporated state law for purposes of determining the relative priority of competing federal and private

_____

it already engaged in individualized inquiry regarding local law and prospective debtors).

[60] *O'Melveny & Myers*, 512 U.S. at 89.

[61] *N.S.Q. Assocs. v. Beychok*, 659 So. 2d 729, 731 (La. 1995).

22

liens.[62] In *Magnolia Federal Bank v. United States*,[63] our Court similarly found that, "[i]nsofar as Magnolia's claim would subordinate rather than bar enforcement of SBA's liens for untimeliness, state law is properly invoked against the federal agency."[64] Failure to reinscribe a lien in Louisiana does not extinguish the mortgage. The mortgage merely loses priority status vis-a-vis other creditors.[65] The prohibition against applying state statutes of limitations to the activities of federal agencies consequently does not govern this case.[66] The Louisiana law at issue presents no significant conflict with the FDIC's interests.

We further note that the application of federal law would disrupt commercial relationships predicated on state law.[67] As Joslin concedes, Louisiana has a strong public records doctrine.[68]

---

[62] *See Kimbell Foods*, 440 U.S. at 718.

[63] 42 F.3d 968 (5th Cir. 1995).

[64] *Magnolia*, 42 F.3d at 969. This Court fails to discern a relevant difference between the interests of agencies such as the SBA and the Farmers Home Administration (FmHA) in preserving priority lien status and that of the FDIC.

[65] *See Executors of Liddell v. Rucker*, 13 La. Ann. 569, 571 (La. 1858); *Security Nat'l Trust v. Alexander*, 621 So. 2d 30, 31 (La. App. 2d Cir. 1993).

[66] *See Magnolia*, 42 F.3d at 972; *cf. United States v. Summerlin*, 310 U.S. 414, 416 (1940); *cf. Farmers Home Admin. v. Muirhead*, 42 F.3d 964, 965 (5th Cir. 1995).

[67] *See Kimbell Foods*, 440 U.S. at 728-29, 739-40.

[68] *See McDuffie v. Walker*, 51 So. 100, 105 (La. 1909); *see also* Max Nathan, Jr. & Anthony P. Dunbar, *The Collateral Mortgage: Logic*

The public records doctrine serves important reliance interests, as third parties are "entitled to rely on the absence from the public records of any unrecorded interest in the property."[69] The purposes of the Louisiana reinscription requirement are "to provide public notice of the essentials of the mortgage and to limit 'searching, for the evidence of mortgages, more than ten years back.'"[70] The significance of this doctrine is evident in the Louisiana rule stating that actual knowledge by third parties of an unrecorded interest is immaterial; recordation and reinscription are alone dispositive of priority status.[71]

---

*and Experience*, 49 La. L. Rev. 39, 44 n.22 (1988) (discussing Louisiana's "strong public records doctrine"); Lee Hargrave, *Presumptions and Burdens of Proof in Louisiana Property Law*, 46 La. L. Rev. 225, 234 (1985) (same).

[69] *Dallas v. Farrington*, 490 So. 2d 265, 269 (La. 1986) (emphasis omitted).

[70] *Exxon Process & Mech. Fed. Credit Union v. Moncrieffe*, 498 So. 2d 158, 159 (La. App. 1st Cir. 1986) (quoting *Poutz v. Reggio*, 25 La. Ann. 637 (1873)).

[71] *See Dallas*, 490 So. 2d at 269. The fact that Jump and Bank One had actual notice of the 1984 mortgage and assignment is therefore irrelevant. We note that they are "third persons" as defined in La. Civ. Code Ann. art. 3309 (West 2000) ("Third persons to a mortgage are those who are neither parties to the contract of mortgage or the judgment that the mortgage secures."). Jump and Bank One were not parties to the 1984 mortgage and assignment, which was created by contract. However, Joslin contends that the language, "judgment that the mortgage secures," indicates that Jump and Bank One, who are parties to the 1993 judgment, are not third persons. As previously discussed, a mortgage only binds "third persons" to the extent that it is validly recorded and reinscribed. *See* La. Civ. Code Ann. art. 3308 (West 2000). Following Joslin's reasoning, the FDIC's failure to reinscribe does not render the 1984 mortgage and assignment ineffective as to Jump and Bank One.

Case law affirms the importance of respecting this state policy. The Supreme Court has recognized that state laws of this kind provide private commercial entities with "the stability essential for reliable evaluation of the risks involved."[72] The Supreme Court also has noted that if federal law were to displace state law regulating lien priority, "[c]reditors who justifiably rely on state law to obtain superior liens would have their expectations thwarted whenever a federal contractual security

---

It is unclear whether the current version of Article 3309 applies to a mortgage that was created before the effective date of the Act creating that provision. *See* 1992 La. Acts 1132, §§ 2, 7 (amending prior definition of "third persons" and indicating in general terms the effective date of the Act as January 1, 1993). Louisiana law prior to 1993 defined "third persons" as "persons who are not parties to the act or to the *judgment on which the mortgage is founded*." La. Civ. Code Ann. art. 3343 (West compiled ed. 1973) (emphasis added). This language makes clear that the previous formulation of the category, "third persons," simply excluded parties to the proceedings creating the original judicial mortgage.

The 1992 Act revising this article indicates that the current Article 3309 merely codifies principles of the existing public records doctrine and that it is based on former Civil Code articles 3343 and 3344. 1992 La. Acts 1132, § 2 (cmts. following Article 3309). The commentary following the revised article does not indicate that the new language changed prior law. Indeed, the current version of article 3299 of the Civil Code defines "judicial mortgage" as a mortgage which "*secures a judgment* for the payment of money." La. Civ. Code Ann. art. 3299 (West 2000) (emphasis added). This language mirrors that which appears in Article 3309. Although Bank One and Jump might be parties to a judicial mortgage created by the 1993 judgment, this fact is irrelevant. The parties do not contend that the FDIC failed to reinscribe a judicial mortgage created in 1993. The 1993 judgment only binds Bank One and Jump to the extent that the underlying 1984 mortgage and assignment remains valid.

[72] *Kimbell Foods*, 440 U.S. at 739.

25

interest suddenly appeared and took precedence."[73] Moreover, this Court's jurisprudence affirms that we are to defer to state property regimes when considering whether to apply a federal common law rule.[74] We have found that the "strong local interest in state regulation of land titles. . . . should 'be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.'"[75] As we do not find that state law will significantly impede the work of the FDIC as receiver in this context, "we decline to override [this] intricate state law[ ] of general applicability on which private creditors base their daily transactions."[76] We are ill-equipped to take such a step and leave this matter in Congress's capable hands.[77]

---

[73] *Id.*

[74] *See Farmers Home Admin. v. Muirhead*, 42 F.3d 964, 966 (5th Cir. 1995); *Davidson v. Federal Deposit Ins. Corp.*, 44 F.3d 246, 251 n.4 (5th Cir. 1995); *see also United States v. Yazell*, 382 U.S. 341, 352-54 (1966); *Mason v. United States*, 260 U.S. 545, 555-57 (1923).

[75] *Davidson*, 44 F.3d at 251 n.4 (quoting *Yazell*, 382 U.S. at 352).

[76] *Kimbell Foods*, 440 U.S. at 729.

[77] *See O'Melveny & Myers*, 512 U.S. at 89. Our holding today renders it unnecessary to decide the question of whether the putative exemption of the FDIC from Louisiana reinscription law is assignable to Joslin. *See Federal Deposit Ins. Corp. v. Bledsoe*, 989 F.2d 805, 811 (5th Cir. 1993) (holding that assignees of the FDIC and FSLIC are entitled to federal six-year statute of

Assuming that Louisiana reinscription law applies to the FDIC, Joslin contends that the 1993 judgment satisfied these requirements. We disagree. Article 3333 of the Louisiana Civil Code requires that the holder of the mortgage file a signed, written notice of reinscription which, inter alia, "shall declare that the document is reinscribed."[78] Article 3336 of the Civil Code affirms that this method is exclusive of all others.[79] The Act creating the reinscription method currently in effect states that "[t]he procedure for reinscription of mortgages and privileges as set forth in Civil Code Articles 3328 through 3331 shall be effective as to all requests for reinscription filed on or after [January 1, 1993]."[80] Assuming that the 1993 judgment constitutes a "request for reinscription," the method outlined in Article 3333 applies. Not

---

limitations); *Federal Sav. & Loan Ins. Corp. v. Cribbs*, 918 F.2d 557, 560 (5th Cir. 1990) (finding that assignees of the FDIC enjoy holder in due course status whether or not they satisfy the requirements of state law); *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir. 1990) (holding that the protections accorded the FDIC under the *D'Oench, Duhme* doctrine apply to private assignee).

[78] La. Civ. Code Ann. art. 3333 (West 2000). The name of the mortgagor, as well as the "recordation number or other appropriate recordation information," are also required. *Id.*

[79] La. Civ. Code Ann. art. 3336.

[80] 1992 La. Acts 1132, § 7.

only was the 1993 judgment not signed by an FDIC representative, but it also does not declare that the document is to be reinscribed. Consequently, the 1993 judgment did not reinscribe the 1984 mortgage and assignment.

Even under prior law, the 1993 judgment would not constitute an effective reinscription of the mortgage and assignment. Although a recorded judgment could effectively reinscribe a mortgage, it had to include each of the "substantial particulars" of the mortgage.[81] A reinscription had to contain "notice to the world that the mortgagor continue[s] to admit his indebtedness, and that the mortgagee continue[s] to maintain its mortgage on the property described."[82] The 1993 judgment does not include a copy of the 1984 mortgage and assignment. It only refers to "the oil and gas leases, royalty interests, overriding royalty interests and other property described" in the mortgage. This description fails to provide third-parties with the notice required under Louisiana reinscription law.[83] The judgment also was deficient in other

---

[81] *See Exxon Process*, 498 So. 2d at 160 (quoting *Life Ins. Co. of Virginia v. Nolan*, 159 So. 583, 585 (La. 1935)). Former Article 3369 of the Louisiana Civil Code governs reinscription in this case. Recent statutory amendments do not apply to the 1984 mortgage and assignment. *See* 1992 La. Act No. 1132, § 7 (stating that amendments do not apply to mortgages entered into before January 1, 1993).

[82] *Nolan*, 159 So. at 585.

[83] *See Shepherd v. The Orleans Cotton Press Co.*, 2 La. Ann. 100, 113 (La. 1847) (noting that the description of the property mortgaged is one of the "essential requisites" of Louisiana

respects, as it failed to include, inter alia, "the name of the officer who passed the act [of mortgage and assignment]."[84] We therefore agree with the district court that the 1993 judgment was not a valid reinscription of the 1984 mortgage and assignment.[85]

V

Joslin contends that the Jump judgment was not a "final" judgment and therefore improperly registered. 28 U.S.C. § 1963 allows for registration where a judgment "has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." By the plain

---

reinscription law and that "reference to previous mortgages does not cure that defect").

[84] *A. Miltenberger & Co. v. Dubroca*, 34 La. Ann. 313, 314 (La. 1882).

[85] Joslin also points out that Jump and Bank One made no additional seizure of McFarland's assets following the 1993 judgment. It argues that the 1993 judgment "merged" Jump and Bank One's previous seizure of the proceeds from the mineral leases. Assuming that the FDIC's failure to reinscribe resulted in Joslin's lien losing priority, Joslin contends that Jump and Bank One no longer have a claim to the assets.

Joslin fails to explain what "merger" in this context entails. It is far from clear that the 1993 judgment ended the seizure of the registry funds obtained by Jump and Bank One in 1992. Even if the seizure terminated in the wake of the 1993 judgment, Jump and Bank One's failure to renew this seizure does not necessarily deprive them of a claim. Assuming that they have valid judgment liens against McFarland that have yet to be fully satisfied by the OCS-310 proceeds, they presumably have a claim to the other proceeds generated by the mineral pledge entered into by McFarland. Moreover, Joslin fails to cite any authority in support of its argument. *See* Fed. R. App. P. 28(a)(9)(A); *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4, 212 (5th Cir. 1998).

29

language of the statute, registration may only occur where a judgment or order is final for purposes of appeal.[86] The only exception contemplated by section 1963 is where the district court makes a good cause determination.

Rule 54 of the Federal Rules of Civil Procedure affirms that a judgment is not final for purposes of appeal where it disposes of fewer than all of the claims or parties involved in a case. Rule 54(b) allows a court to "direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

The Jump judgment only disposed of Jump's claims. Litigation involving other parties to the Colorado litigation did not conclude until August 25, 1997—long after the FDIC's reinscription of the mortgage and assignment. As Jump concedes that no Rule 54(b) certification was obtained, the judgment upon which he bases his claim was not final.[87] Because the registration of the Jump judgment was premature,[88] it could not prime the FDIC's lien following the

---

[86] The time for appeal articulated in Fed. R. App. P. 4(a)(1)(A) is only triggered by the entry of a final judgment or order. *See Nelson v. Foti*, 707 F.2d 170, 171 (5th Cir. 1983) ("F.R.A.P. 4(a) provides that an appeal from a *final* judgment must be filed within 30 days of entry of judgment.") (emphasis added).

[87] *See Huckeby v. Frozen Food Express*, 555 F.2d 542, 545-46 (5th Cir. 1977); *Redding & Co. v. Russwine Constr. Corp.*, 417 F.2d 721, 723-24 (D.C. Cir. 1969).

[88] Our holding today does not constitute a collateral attack

FDIC's reinscription of the mortgage and assignment in 1995. Although registration of the 1997 judgment would assure Jump of a claim to McFarland's assets, a resulting lien would remain subordinate to those held by Bank One and Joslin, respectively.[89]

The district court focused on the unique status of consent judgments, which are unappealable.[90] The court held that the time for appeal from a consent judgment expires immediately upon the entry of judgment.[91] Even if we accept the court's position, it does not alter the fact that Jump failed to obtain the requisite Rule 54(b) certification. We are unprepared to carve out an exception to Rule 54(b) for consent judgments. Such a decision is more appropriately taken by Congress.[92]

---

on the 1993 judgment—a step that we are not permitted to take. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 375 (1940); *Jack's Fruit Co. v. Growers Mktg. Serv., Inc.*, 488 F.2d 493, 494 (5th Cir. 1973) (per curiam).

[89] On remand, Jump will have the opportunity to re-register his judgment. We are unprepared to view the conclusion of the Colorado litigation in 1997 as automatically rendering Jump's registered judgment final.

[90] *See Stanford v. Utley*, 341 F.2d 265, 271 (8th Cir. 1965) (Blackmun, J.).

[91] *See id.; Kelly v. Greer*, 354 F.2d 209, 211 (5th Cir. 1965) (dictum); *Dichter v. Disco Corp.*, 606 F. Supp. 721, 724 (S.D. Ohio 1984).

[92] *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 n.28 (1978) ("The Congress is in a position to weigh the competing interests of the dockets of the trial and appellate courts, to consider the practicability of savings in time and expense, and to give proper weight to the effect on litigants. . . . This Court . . . is not authorized to approve or declare judicial modification.

In light of the preceding, we hereby AFFIRM the judgment of the district court finding that Louisiana reinscription law operates to strip the FDIC of priority lien status. We further REVERSE the district court's holding that the Jump judgment was an executable, final judgment and its finding that the Jump judgment was senior to Joslin's lien. We REMAND for proceedings not inconsistent with this opinion.

AFFIRMED in part, REVERSED and REMANDED in part.

---

. . . [These] choices fall in the legislative domain.") (quoting *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 181-82 (1955)).